**FORT WORTH & DENVER RY. CO.**

v.

**FERGUSON.**

No. 15449.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 16, 1953.

Rehearing Denied Nov. 13, 1953.

Barwise,, MaGoffin & Carrigan, McGee & Armstrong, and R. Wright Armstrong, Jr.,·Fort. Worth, for appellant.

Wade, Davis & Callaway and Clyde M. Marshall, Jr.,·Fort Worth, for appellee.

MASSEY, Chief Justice.

From a judgment for plaintiff automobile owner and the collision insurance carrier on plaintiff's automobile in the total amount of $220.05 (the intervenor ·Insurance Company having been subrogated and/or assigned plaintiff's cause of action against defendant to the extent of $170.05), growing out of defendant Railway Company's negligence resulting in a collision between plaintiff's automobile, and defendant's train, the defendant appeals.

Judgment affirmed.

L. L. Ferguson, as plaintiff, and as owner of the cause of action, filed a suit for damages in the amount of $220.05, occasioned by virtue of injury to his automobile in a collision, against the Fort Worth & Denver Railway Company, as defendant, growing out of an automobile-train collision in Montague County, Texas. Plaintiff alleged that he was driving his automobile upon the State Highway between Bowie and Jacksboro, Texas,.and within the city limits of Bowie, Montague County, Texas, and when in, the process of driving his automobile across defendant's tracks where said· tracks cross the highway, the defendant, through its agents and servants, backed a locomotive and train of unlighted cars across said

highway and into and against the right side of plaintiff's automobile, damaging the automobile as a direct and proximate result of defendant's negligence.

It appears that the time of said occurrence was approximately 10:45 P. M., on date of November 26, 1951, during the course of an extremely dark night and when it was raining.

Plaintiff alleged various omissions of defendant to have constituted negligence, premised on defendant's failures with reference to lookout, warning whistle, bell ringing, insufficient lighting, absence of flagman or signalman, failure to stop, failure to provide adequate lighting at the crossing and to provide electric signal lights or other special warning devices at the crossing, etc.

Plaintiff further alleged that said crossing, in view of the conditions obtaining at the time and place of the collision, all of which were well known to defendant at such time, was an extra-hazardous crossing, where in view of said conditions at said time defendant should have had such crossing lighted or should have provided a flagman or flashing lights or other special warning devices for the protection of motorists approaching said crossing.

Plaintiff alleged $220.05 automobile damages, representing the reasonable cost for parts, labor and materials necessary to repair the automobile and place it in the condition in which it was immediately prior to the collision, and alleged further that $220.05 represented the difference in the reasonable cash market value of said automobile between the time immediately subsequent to said collision and immediately prior thereto at the place of the occurrence.

Defendant answered by general denial, and specially pleaded contributory negligence in various particulars on the part of plaintiff. Defendant did not by any pleading, sworn or unsworn, advance a denial that the plaintiff was authorized to sue it in the capacity of owner of the cause of action, which was the capacity in which the action was originally brought. Defendant did not interplead any additional party. It appears that the case was called for trial on February 16, 1953, and both parties announced ready. With leave of the court and outside the presence of the jury, the defendant's attorney put the plaintiff L. L. Ferguson on the stand and asked him if his damages—out of pocket damages—on the collision in question were not in fact $50. In response to the question, plaintiff answered that his said damages were $50. Defendant's attorney then asked if it was not a fact that he did not have any power or authority or power of attorney from any other party to bring a law suit for damages in excess of $50, to which the plaintiff answered, in effect, that he did not have any authority or power from any other party to bring a lawsuit for damages in excess of his own damages of $50. Then defendant's attorney asked the plaintiff whether or not he had entered into any agreement with any other party which would allow him to bring a lawsuit for such other's benefit or for any damages that such other party might have suffered, other than the $50 damages he himself had suffered, to which the plaintiff replied that he had not entered into such an agreement.

After this occurred, the attorney of record for the plaintiff examined him and showed, over the strenuous objection of the defendant, that as a matter of fact the circumstances attendant to the bringing of the lawsuit were generally as follows: At the time the collision in question occurred the Service Fire Insurance Company of New York had in effect upon the automobile of the plaintiff a policy of $50 deductible collision insurance. Under and by virtue of said policy of insurance and on account of the injury to the automobile resultant from the collision, the Company paid (under the measure of damage provided by the policy) to plaintiff, as the insured under said policy, the sum of $170.05. This payment made by the Insurance Company actually constituted all but the first $50 necessarily expended in order to repair the damage done to the plaintiff's automobile as result of the collision. The plaintiff, by an instrument executed at the time of said payment

(whether the payment was made to plaintiff in person, or to others for or in his behalf being immaterial in our opinion), had subrogated and assigned to the Insurance Company a portion of his interest in and to his claim and cause of action for damages against the defendant to the extent of said payment, and, as is customary in such cases, the attorneys selected for the purpose were authorized to sue the defendant in the name of the insured, the plaintiff in this case, but for the constructive use and benefit of both the plaintiff and the Insurance Company.

The defendant then filed a plea to the jurisdiction, not alleging any fraud upon the jurisdiction but alleging that plaintiff had established by his testimony the fact that the amount of damage suffered by him was $50, and hence, $50 necessarily was the amount in controversy in the suit between the named plaintiff and defendant, and the jurisdiction of a cause involving $50 being exclusively in the Justice Court, the County Court did not have jurisdiction.

Alternatively, defendant plead that inasmuch as plaintiff had sought to recover damages based upon a claimed loss of $220.-05 while his admitted damage was only $50, it was suggested that C. I. T. Corporation, an automobile finance company (which concern apparently was financing plaintiff's purchase of his automobile at the time of the collision in question), was jointly interested in the subject matter of the suit and was interested in the collection of such damages as might have resulted over and above the amount of $50 in damages plaintiff admitted as the damages he had sustained. Defendant suggested in its pleading that the court issue citation compelling the C. I. T. Corporation to file its pleading stating its interest and claim as against the defendant as to the damages sought to be recovered in the name of the plaintiff, or to join in the suit with the plaintiff, or that the court order the plaintiff to show by what power and authority he had brought suit against the defendant to recover damages for the benefit of the C. I. T. Corporation.

At this stage of the proceedings, the attorneys of record for the plaintiff filed a pleading denominated "Petition of Intervention in behalf of the Service Fire Insurance Company of New York". This pleading was filed by said attorneys in behalf of such intervenor, by which the intervenor alleged that at the time and place of the collision in question it had a certain designated policy of insurance in effect upon the automobile of the plaintiff, whereby it insured plaintiff against all loss by collision damage to the automobile involved in said collision in excess of the policy deductible amount of $50; that by reason of said collision and said policy the intervenor became obligated to and did pay to plaintiff the sum of $170.05, as partial reimbursement for the damages resulting to plaintiff's car from said collision, whereby it in turn, through operation of subrogation, became the owner of plaintiff's cause of action to the extent of said amount, and further that plaintiff had executed an agreement assigning to the intervenor his rights against any person or firm responsible for the damage done to his automobile to the extent of said sum of $170.05, whereby it was the assignee owner of the cause of action to such extent. Intervenor prayed the adjudication of the court that it was entitled to recover the sum of $170.05, together with interest and costs, out of the amount to be recovered by plaintiff of the defendant if plaintiff should prevail by his suit against the defendant.

The intervenor and the plaintiff filed in the trial court an instrument denominated "Motion for Instruction not to Mention Insurance", in which instrument they stipulated with one another that the intervenor was subrogated to the sum of $170.05 in the total amount of plaintiff's cause of action against the defendant, and that in the event it be found upon the trial that plaintiff was entitled to collect damages as sued for against the defendant, that the first $170.05 of the total of such damages awarded should be adjudged to the intervenor, with such amounts awarded in excess thereof adjudged to plaintiff. Plaintiff and intervenor

then jointly moved the court to instruct defendant and its attorneys and witnesses not to mention the fact of the intervenor's insurance coverage upon plaintiff's automobile at the time and place in question during the trial of the case. The court sustained this motion jointly filed in behalf of plaintiff and intervenor, and the case was apparently properly tried upon the single question, in so far as the jury was concerned, as to whether or not plaintiff was entitled to collect damages of and from the defendant, and if so in what amount.

At the close of plaintiff's opening evidence, defendant filed a motion for instructed verdict, which was refused by the court, and at the conclusion of all the evidence the defendant filed an additional motion for instructed verdict, which motion was by the court refused. Finally, after the jury had returned its verdict with findings favorable to the plaintiff, the defendant filed its motion for judgment non obstante veredicto, which motion was likewise refused by the court.

The jury by its verdict found that defendant failed to keep a proper lookout, failed to stop the train before it collided with plaintiff's automobile, failed to blow the whistle on the locomotive immediately prior to switching the train on the crossing in question, failed to ring the bell on the locomotive continuously as said train approached and entered the crossing in question, failed to blow the whistle on the locomotive loud enough for it to have been heard by the plaintiff at or near the crossing in question under the circumstances and conditions existing at said time and place, failed to have on the lead car of said train a light bright enough under the circumstances and conditions then existing to warn motorists on the highway of the train's approach. In each instance the jury found such to constitute negligence which was a proximate cause of the collision. The jury further found that under all the circumstances attendant the crossing was an extra-hazardous crossing at the time and place in question, and so dangerous that an ordinarily prudent person could not use the same with safety, and which condition was

known to the employees operating defendant's train, in view whereof the defendant's failure to provide electric signal lights or other special warning devices for the crossing constituted negligence and a proximate cause of the collision in question. The same findings were made regarding the failure of the defendant to station a watchman or flagman to warn motorists approaching the crossing.

All of the issues submitting contributory negligence on the part of the plaintiff were answered acquitting plaintiff of any such negligence.

The issue submitted on damages was an inquiry as to what amount represented the reasonable and necessary cost of repairing the damage to plaintiff's automobile proximately caused by and directly resulting from the negligence of the defendant. The jury by its answer thereto found the amount to be $220.05.

Judgment was entered for plaintiff and intervenor, as their interest appeared, and defendant appealed.

In view of the particular events and occurrences which took place prior to the actual trial of this case upon matters material to be determined by trial, it is apparent that considerable time was involved upon matters actually wholly unrelated to the issues to be determined. Such events and occurrences are not at all unusual and indeed are the common experience of courts called upon to try cases wherein a part of a plaintiff's original cause of action has been assigned or subrogated to third-persons who perhaps are not named as principals in the lawsuit.

It is believed that a greater understanding of those principles of law which are involved and those principles of law which are not involved in such character of cases would readily enable a trial court, in case of future circumstances similarly arising, to promptly dispose of the questions which, in many instances, are mistakenly advanced as a premise of defense, but which in actuality constitute no defense at all. In discussing these principles we will take, as the basic

cause of action sued upon, one where the plaintiff named as such in the pleadings purports to sue for the whole of the damages resulting from an automobile collision, as such damages were occasioned as result of damage to his property, such as to an automobile.

■ The whole doctrines of subrogation and assignment of all or part of an existing cause of action for damages for negligent tort, or of all or part of the right, title and interest in and to the proceeds, if any, realized or to be realized from the successful prosecution of the cause of action, are founded in equity. Viewing the circumstances of the subrogation or assignment made in a particular case and regarding as done that which ought to be done, any confusion of understanding as to rights of the parties vanishes. 5 Tex.Jur., Assignments; 39 Tex.Jur., Subrogation.

■ The only possible prejudice with which we need concern ourselves is such prejudice as could result to a defendant from his proceeding to trial in a case brought by plaintiff who was the original owner of the cause of action upon which suit is brought. Such a defendant could not be prejudiced if he is not at the time on notice of an assertion of interest by a third party to at least a part of the cause of action, the whole of which is sued upon by the record plaintiff to the suit. The defendant would experience no prejudice by proceeding, when he had no notice, for in such cases the plaintiff would be held to have received any damages collected by way of his suit as a trustee for whoever was rightfully entitled thereto, by and through him, because of subrogation or assignment. And the defendant paying such damages to the plaintiff would not be in any danger of subsequent liability to such a third party, even should the plaintiff disregard the trust duties existing between such plaintiff and such third-party subrogee or assignee, for the defendant is under no duty to protect any third party or to protect himself from any third party who has not actually served him with notice of an

asserted interest. 46 C.J.S., Insurance, § 1209. The transaction between the original owner of a cause of action and a third party securing from him an interest therein is private in its nature. It becomes material to the defendant only when he is placed on notice thereof.

■ In case he was actually on notice from such a third party that the third party owned all or a part of the cause of action and he knows or has good reason to believe that the named plaintiff is not suing under arrangement whereby the third party's interests are protected or prosecuted in the course of the suit filed against him on the whole cause of action, he is under the duty to either protect the interest of such third party in the way he pleads to and tries the suit of the plaintiff, or he is under the duty to protect himself from such party by properly raising the issue as to the plaintiff's right to sue in the capacity in which he does sue, to wit: as owner of the whole cause of action, or by timely bringing the third party into the case as a party thereto, that he may extinguish his whole liability on the whole cause of action at one time. If he does neither, then he could not complain of any exposure to further liability or litigation on the cause of action from the third party subrogee-assignee. 5 Tex.Jur., p. 31, sec. 24. He may not go to trial in a case where the plaintiff sues in the capacity of owner of the entire cause of action, raising in advance no timely or proper plea controverting such, and later complain of a suit by the person known to have been a true owner at the time of the previous trial, whom he knew not to have been a participant in the previous trial. Of course, in the average case a defendant in such a case may be set at ease by the statement of counsel of record for the record plaintiff that he is representing and prosecuting the interests of any such subrogee-assignee. He would be entitled to rely upon such a statement made by his brother lawyer.

■ In a case where such a third party subrogee-assignee's existence and interest in a cause of action are disclosed to a de-

fendant at a very late date and by way of the filing of a plea of intervention in a suit about to be tried, or even in trial between plaintiff and defendant, the defendant still would not be prejudiced. Prejudice, if any, under such circumstances, would exist only as to a plaintiff who does not admit the existence of such subrogation or assignment and who might take issue to the facts underlying the third party's claim of the existence of his ownership in the cause. The defendant could have no preference among the possible beneficiaries of any judgment which might be secured against him on the cause of action for. in any event he cannot be injured. Manning v. Green, 1909, 56 Tex.Civ.App. 579, 121 S.W. 721, error refused; 39 Tex. Jur., p. 762, sec. 9. Any testimony introduced upon such an issue, being strictly an issue between the plaintiff and the third party, should be of no interest to the defendant. He would have no legal right to cross-examine witnesses upon the issue. Where the plaintiff and the third party agree and stipulate their entitlement to the cause of action the defendant could not inquire into the matter.

In Texas the plaintiff may, with the authority and consent of the subrogee-assignee, sue upon a cause of action which he has totally transferred, where he sues for the use and benefit of such transferee. In such a case the subrogee-assignee may sue for his own use and benefit, but in the name of the plaintiff. The plaintiff could bring the suit likewise where he had only transferred a part of the cause of action. In such a case he would be bringing it for his own use and benefit in so far as his non-transferred interest still subsisted and for the use and benefit of his transferee in so far as the interest in the cause of action had been transferred. The subrogee-assignee could, with the authority and consent of the plaintiff similarly, sue in the name of the plaintiff, with like contemplation as to the use and benefits to be derived from the act. Or, the plaintiff could sue for his own use and benefit as his interest might appear, with the subrogee-assignee suing in its own name for its own use and benefit as its interest might appear, both prosecuting their separate claims (though founded on the same cause of action) in the same suit. 5 Tex.Jur., Assignments; 39 Tex.Jur., Subrogation. In any of these events the procedure would actually constitute the prosecution of a single cause of action, the only variance from the ordinary being in the fact that the disposition of the proceeds of a judgment secured from the defendant on such cause of action, if and when secured, would not necessarily be directly or solely to the person who had the original title to the cause of action. The amount in damages sued for as observed in the original petition filed in this case to have been within the jurisdictional limitations of the County Court, it is established, in the absence of the defendant's timely pleading allegations of fraud upon the jurisdiction, that the cause is filed in the proper court. 11 Tex. Jur., p. 739, sec. 26; Super-Cold Southwest Co. v. Pennington, Tex.Civ.App., Fort Worth, 1950, 231 S.W.2d 687. No such allegation of fraud upon the jurisdiction was advanced in the trial court, however, in the case before us on this appeal, and even had there been such would have been without merit for the cause of action was a single cause of action, originally in the named plaintiff, and the fact that there had occurred some transfers in contingent interests in damages, if any, recoverable upon the prosecution of said original cause of action subsequent to the time it originally accrued to the plaintiff, would have no effect upon the jurisdictional amount in controversy. Even though there existed interests in such cause of action in amounts below the minimum amounts requisite to confer jurisdiction in a County Court, yet since the total amount in controversy, or the amount of the aggregate of interests therein, transferred or not, is within the jurisdiction limitations of said court, the fact of such a transfer will not be allowed to defeat the court's jurisdiction.

It will be recalled that in the trial court before getting to the trial of the merits of the action, the appellee Ferguson testified that his damages were in the

amount of $50. While there is no question but what his statement is an admission against his own interest, it is by no means conclusive. The amount of damages an individual has suffered by reason of collision damage done to his automobile is a conclusion of law based upon established facts. The facts whereby damages would be established as to amount by proper legal conclusion would entail findings of fact such as value of the automobile before the damage was done, value in the damaged condition, reasonable cost of necessary repairs, depreciation after repair, when performed, as compared with the value before the damage was experienced, etc., as might be requisite for the proper legal conclusion. Ferguson did not testify to any of these facts, nor was he shown to be competent to testify to such facts. The case was tried upon the measure of damage theory other than the simple one of determining the difference in value of property before and after a collision, and a single element of such more complicated measure of damage theory was submitted to the jury. The issue submitted was an inquiry enabling the jury to find the amount representing the reasonable cost of necessary repairs to Ferguson's automobile on account of the damage sustained in the collision. This was the answer of the jury upon which the judgment, by way of legal conclusion, was entered as to amount of damages. However, it would be improper in any event to allow a party to a suit to "trap" his adversary into making erroneous statements prejudicial to himself, and, once the statements were made, to close the mouth of the adversary and refuse to hear his explanation or correction. Any witness can always be shown to have been mistaken in a statement he has once made during the course of his testimony and he will be allowed to correct, modify or explain such previous testimony, as may be within his ability so to do. 17 Tex.Jur., p. 367, sec. 125.

Several of the points upon which the appeal is brought are settled by what we have hereinabove stated to constitute our opinion of the law. The remainder of the points of appellant primarily constitute its contention that it was entitled to have a verdict instructed in its favor at the close of appellee's opening evidence and at the close of all the testimony, premised in the first instance upon the claim that no negligence issue was raised as to the appellant, and in the second instance upon the claim that the evidence established appellee Ferguson's contributory negligence as a matter of law. Appellant also contends that the court erred in refusing to set aside the jury's verdict, once it was returned, for the same reasons and for the additional reason that such verdict was contrary to the greater preponderance of the evidence.

■ Appellee's opening evidence, as same related to the negligence of the appellant, was comprised solely of testimony of L. L. Ferguson as to events of that dark and rainy night. He testified that prior to driving his automobile upon the railroad tracks where it was struck by appellant's train he had stopped his automobile and looked both to his right and to his left. The point where he stopped was some 10 to 15 feet before crossing the first of three sets of tracks comprising the crossing, on the second set of which the collision took place. There was a building to Ferguson's right which obscured his view down the track, on which appellant's train was actually approaching, except for approximately 25 feet within his view. However, Ferguson testified he looked and listened and that he neither saw nor heard anything which gave him any warning of the train's approach, so he started his automobile and drove forward and upon the track where he was struck. He did not see the train until it was too late to avoid the collision. It was also shown that the train was backing up and had its headlight shining in the opposite direction from the crossing in question, so that no headlight reflection was observable by the witness at the point where he stopped. In view thereof several, at least, of the alleged omissions ultimately submitted to the jury on the question of appellant's negligence

were raised, and the court properly denied its motion for an instructed verdict based upon appellee's failure to raise an issue as to such. Appellant predicates its contention that appellee Ferguson was negligent as a matter of law upon his admission that between the time he started forward and the time he was struck he did not see the train, during at least a part of which time the train was in view and either in the path being traveled by the automobile, or about to be driven into the path. The appellant contends that had Ferguson looked he could not have failed to see the train, and since it was undisputed that he would have and could have stopped his automobile so that it would not go upon the tracks had he seen the train, he was contributorily negligent as a matter of law.

■ ■ It seems to be the general rule that the question of negligence is a question of fact and it is somewhat rare when a court of this State has held that negligence has been shown as a matter of law. Chief Justice McDonald, in Lone Star Gas Co. v. Fouche, Tex.Civ.App., Forth Worth 1945, 190 S.W.2d 501, error refused, w. m., said that although there is a divergence of opinion as to the contributory negligence of a driver who fails to discover an object in the road within time to stop, the trend of decisions in Texas is unmistakable: The issue is usually one for the jury.

■ Justice Boyd of this court collated authorities upon the point in his opinion in the case of Hipfner v. Anderson, Tex.Civ.App., Fort Worth 1953, 258 S.W.2d 357, and stated that such cases seemed to hold that an injured party will not be considered guilty of contributory negligence as a matter of law if he offers some explanation, comporting with reason, why he could not see the object with which he collided in time to avoid the impact. It appears that Ferguson was not conducting the movements of his automobile immediately prior to the time of the collision with an entire want of care; and we are constrained to hold that whether he exercised that degree of care that an ordinarily prudent driver

would have exercised under the same or similar circumstances was a question of fact for the jury. Hipfner v. Anderson, supra. In view thereof appellant's motion was properly overruled. For the same reason the court properly overruled the appellee's motion to set aside the verdict of the jury which acquitted Ferguson of negligence in the respect urged.

In view of our holding just stated, the matter of whether or not the issues upon "extra-hazardous crossing" submitted to the jury and favorably answered by the jury in favor of the appellee should or should not have been given in the court's charge are not necessary of discussion.

■ Appellant predicates a point of error upon the fact that the appellee Ferguson was allowed over objection to estimate the speed of the train by the speed at which it shoved his car sidewise upon striking it. The testimony was to the effect that the speed in question was about two miles per hour. Such testimony could not have prejudiced the appellant. Any effect it might have had could only have been favorable to the appellant, and the speed of the train was not a disputed issue in the case. Appellant's own witnesses testified that the train's speed immediately prior to time of the collision was four miles per hour.

■ Appellant predicates a point of error upon the fact that appellee's attorney stated to the jury during the course of the argument that all of appellant's witnesses were its employees, and that appellant's counsel was the son of the vice-president for appellant, and that under the circumstances the jury knew that these witnesses were not going to say anything against their employer. The only place in the record we find any mention of this occurrence is in the motion for new trial that appellant filed. If such event occurred there was no bill of exceptions taken to such, reduced to writing and made a part of the record, and complaint of such in the body of the motion for new trial filed in the trial court is not a character of assignment

which is supported by what an appellate court may consider to be facts reflected in the record on appeal, to which record we are confined. The point may not be considered. 3-A Tex.Jur., p. 487, sec. 392.

The judgment of the trial court is affirmed.