**RALSTON PURINA CO., Appellant,**

v.

**BARKLEY FEED & SEED CO., INC., et al., Appellees.**

**No. 01–85–0856–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 30, 1986.

Rehearing Denied Nov. 26, 1986.

Donald R. Hallmark, Timothy W. Ferguson, Boswell & Hallmark, Houston, for appellant.

Michael B. Schwartz, Butler & Binion, Houston, for appellees.

Before EVANS, C.J., and HOYT and ASHWORTH (Retired, Sitting by Assignment), JJ.

## ON MOTION FOR REHEARING

HOYT, Justice.

Our opinion issued July 31, 1986 is withdrawn, and the following is substituted. The motion for rehearing of appellees, International Proteins Corporation and Atlantic Shippers of Texas, Inc., is overruled.

This is an appeal from a take-nothing judgment entered in an action for damages based on theories of strict tort liability and negligence.

Barkley Feed & Seed Company and Holmes Foods, Inc. (collectively referred to hereinafter as "Barkley") sued International Proteins Corporation, Atlantic Shippers of Texas, Inc., a wholly-owned subsidiary of International Proteins, (collectively referred to hereinafter as "IPC"), and Ralston Purina Company ("Purina") for damages that Barkley sustained in purchasing contaminated fish meal produced by Purina and distributed by IPC. After filing answers to Barkley's claim, both Purina and IPC asserted cross-actions against one another for contribution and indemnity. These cross-actions were settled on October 24, 1978, when Purina tendered $167,-706.70 to IPC as settlement.

Before trial, Purina settled with Barkley for $341,604.32 in exchange for a release and indemnity agreement. Earlier, in December 1978, Purina had settled with Holly Farms Poultry Industries, Inc. ("Holly Farms"), not a party to the lawsuit, for $305,461.16 in exchange for a release and indemnity agreement. Neither of the settlement agreements was presented to the trial court for approval, and IPC did not

participate in either settlement. Both releases purported to release Purina and its affiliates but made no mention of releasing IPC.

Several years after these settlements were effected, the lawsuit appeared on the dismissal docket and was dismissed. Pursuant to Purina's motion to reinstate, the trial court reinstated the case in May 1984. Purina then filed an amended cross-action against IPC alleging damages independent of and in addition to its claim for contribution and indemnity. Barkley's pleadings were never amended, nor were other parties joined as plaintiffs or defendants.

At trial, only Purina and IPC were present, and Purina put on evidence supporting Barkley's claims for damages. The evidence presented consisted of expert testimony regarding Barkley's losses and essentially comported with the settlement damages previously paid by Purina to Barkley and Holly Farms.

The jury found that IPC was negligent in its failure to recall the fish meal. It also found that Purina had marketed an unreasonably dangerous product without adequate warning of the product's condition and that this act was a producing cause of Barkley's damages. The jury then apportioned liability 70% against Purina and 30% against IPC but refused to award any damages against either. Based on the jury's answers, the trial court entered a take-nothing judgment against Barkley. In this appeal, Purina asserts five points of error, and IPC asserts 11 counterpoints of error.

Purina contends that the trial court erred in entering a take-nothing judgment because: (1) the damages sustained by Holly Farms and Barkley were established as a matter of law; (2) the finding of zero damages was against the great weight and preponderance of the evidence; (3) causation was not allocated in accordance with Texas law; (4) Purina was entitled to contractual indemnity based on the settlement agreements; and (5) causation was not properly allocated because Holly Farms' cause of action was also assigned to Purina.

In addition to its reply to Purina's points of error, IPC charges by counterpoints that the court erred in failing to grant a motion for instructed verdict. In this regard, IPC asserts that: (1) Purina's claims were barred by the statute of limitations; (2) Purina's claims are barred as a matter of law; (3) Purina's cause of action is derivative in nature, and because Barkley's claim was dismissed, Purina's claim cannot survive as an independent cause of action; and (4) there was no evidence to support the jury's answers to special issue numbers 3(a) and 3(b), and the jury's answers to special issue numbers 3(a), 3(b), and 4 were against the great weight and preponderance of the evidence.

We first address IPC's counterpoints regarding the trial court's authority to reinstate Barkley's cause of action. Reinstating a case on the trial docket is governed by rule 165a of the Texas Rules of Civil Procedure. Rule 165a states in relevant part:

1. Dismissal. A case may be dismissed for want of prosecution or failure of any party seeking affirmative relief or his attorney to appear for any hearing or trial....

* * * * * *

2. Reinstatement....

The court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional

....

■ This rule contemplates that any party seeking affirmative relief may cause a dismissed case to be reinstated. *George v. George*, 564 S.W.2d 172, 174 (Tex.Civ.App.—Tyler 1978, no writ). Therefore, a party that is not seeking affirmative relief is not authorized under rule 165a to have the case reinstated. *Id.*

Purina contends that it is entitled to have the case reinstated because it is the real party in interest, having settled Barkley's claim against Purina and obtained an indemnity agreement that purported to assign Barkley's claim to Purina. The agree-

ment between Purina and Barkley provided in pertinent part:

> As security for this indemnity and hold harmless agreement, Barkley Feed and Seed Company, Holmes Food, Inc., Barkley Produce Company, Inc., Riviera Poultry Farms and their attorneys, Klebeg & Weil, here and now *pledge and assign* over unto the said Ralston Purina Company, its insurer and their servants, agents and employees *any judgment that they might recover against any such third party* or parties, to such extent, and to all intents and purposes as may be necessary to fully protect and indemnify Ralston Purina Company, and its insurer.

(Emphasis supplied.)

"The assignment of things in action is now the rule and nonassignability the exception. · Practically the only classes of choses in action which are not assignable are those torts for personal injury, wrongs done to the person, ... and contracts of a purely personal nature, such as promises of marriage." *Wolff v. Commercial Standard Insurance Co.*, 345 S.W.2d 565, 568 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.). This Court followed this reasoning in *Peniche v. Aeromexico*, 580 S.W.2d 152, 156–57 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

■ Considering the intentions of Purina and Barkley, as evidenced by their agreement and the manner in which the suit was handled following the settlement, we hold that an assignment of Barkley's cause of action resulted, and that a justiciable cause of action continued to exist because Barkley, the original plaintiff, remained in the suit, and the rights of Barkley remained in issue. *See Fort Worth & Denver Railway Co. v. Ferguson*, 261 S.W.2d 874 (Tex.Civ.App.—Fort Worth 1953, writ dism'd); Tex. Prop.Code Ann. sec. 12.014 (Vernon 1984). Therefore, Purina was entitled to reinstate Barkley's cause of action, and the trial court did not commit error in accommodating Purina.

We overrule counterpoints one, six, and seven.

■ Purina's points of error one, three, and four challenge the trial court's entry of a judgment awarding zero damages based on the jury's answer of zero to Special Issue No. 16 because the evidence of Barkley's damages was undisputed and virtually unchallenged, and such damages are therefore proved as a matter of law. IPC contends that the confusion and error on the part of the jury was brought on and invited by Purina and that Purina cannot now complain on appeal about the result. Special Issue No. 16 inquired:

> What sum of money, if any, do you find from a preponderance of the evidence would fairly and reasonably compensate Barkley Feed & Seed and Holly Farms for damages sustained by them as a producing cause or proximate result of having been sold and having used contaminated fish meal?
>
> Answer in dollars and cents, if any, to each.
>
> a. Barkley Feed & Seed       Answer 0
> b. Holly Farms               Answer 0

"[I]t is only within the province of the court or jury to decide conflicting evidence, and where there is evidence on an issue and no evidence to the contrary, the court or jury has no right to disregard the evidence and decide the issue in accordance with their wishes." *Mack v. Moore*, 669 S.W.2d 415, 419 (Tex.App.—Houston [1st Dist.] 1984, no writ). The fact that the evidence came exclusively from an expert witness does not obfuscate this rule. *Id.*

■ In the present case, the only evidence of damages was produced by Purina. That testimony established that Barkley sustained $319,987.17 in damages. This testimony was not challenged in such a manner that a jury could draw more than one conclusion regarding the amount of Barkley's damages and thereby disregard the evidence. *See Exxon Corp. v. West*, 543 S.W.2d 667 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). We therefore hold that the evidence established the amount of Barkley's damages, that the

jury's refusal to find damages and the trial court's failure to award Purina damages against IPC was error.

We sustain points of error three, four, and that portion of point of error one relative to the jury's finding of zero to Special Issue No. 16(a). However, we overrule point of error five and that portion of point of error one relative to the jury's finding of zero dollars to Special Issue No. 16(b).

Barkley's cause of action was filed in October 1979, and Barkley never amended its cause of action to include Holly Farms as a party plaintiff or defendant. Likewise, no pleading is on file whereby Holly Farms sought to intervene in Barkley's pending cause of action, even though the record shows that Holly Farms was aware of its damages in 1978. Under these facts, we hold that Holly Farms never commenced a cause of action against Purina and IPC within the prescribed period for commencing causes of action. *See* Tex.Civ. Prac. & Rem.Code Ann. sec. 16.003 (Vernon 1986). Holly Farms' cause of action is barred by limitations as a matter of law.

■ Purina's amended cross-action filed in 1984 does not alter this result. It too, as a cross-action, alleged new causes of action and was barred by the statute of limitations. Furthermore, the nature of Purina's amended cross-action was derivative, and Purina could not recover under it because the cross-action was one for contribution, and was governed by *Beech Aircraft Corp. v. Jinkins*, 698 S.W.2d 722, 726 (Tex.App.— Houston [1st Dist.] 1985, writ ref'd n.r.e.). Because Purina simply settled a part of the cause of action with Holly Farms, without securing a judgment approved by the court relative to the settlement, no right of contribution existed for Purina. *Id.* A literal reading of Purina's pleading, that alleges independent grounds of recovery, reveals that Purina amended the wrong cause of action. It was Holly Farms' claim that Purina sought to assert, and because the claim had not been previously filed by Holly Farms, Purina could not raise it in its own name.

We therefore sustain counterpoints of error two, three, four, and five.

■ But, we overrule IPC's counterpoints eight, nine, ten, and eleven that contend that there was no evidence, or that it was against the great weight and preponderance of the evidence, for the jury to find that IPC was negligent in failing to recall the fish meal, and that such failure was a proximate cause of the event made the basis of the suit.

The jury found that IPC became aware of the fact that the fish meal delivered by Purina was contaminated shortly after February 8, 1978. IPC did not make an investigation at that time, and when contacted later, on two occasions, stated that the contaminated fish meal had been blended and shipped out of the country. The evidence further shows that IPC discovered later that it still had Purina fish meal in its warehouse.

After reviewing this evidence, we hold that the verdict was not "so against the great weight and preponderance of the evidence as to be manifestly unjust. ..." *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Finally, Purina contends that the judgment should include prejudgment interest pursuant to *Cavnar v. Quality Control Parking Inc.*, 696 S.W.2d 549 (Tex. 1985). The nature of Barkley's damages "consist of direct cost to flocks destroyed, contaminated meal, destruction cost, increased manufacturing cost, profit and loss—grow outs, growers' fees, falling profit, and Homes Processing profit."

Even before *Cavnar*, prejudgment interest was recoverable for the type of damages proved in this case. *See Ewing v. Wm. L. Foley, Inc.*, 115 Tex. 222, 280 S.W. 499 (1926) (lost profits and injury to goodwill); *Miles v. Royal Indemnity Co.*, 589 S.W.2d 725, 736 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.) (property damage); *Panhandle & Santa Fe Railway Co. v. Montgomery*, 140 S.W.2d 241, 249 (Tex.Civ.App.—Amarillo 1940, no writ) (in-

jury to cattle); *see also Cavnar,* 696 S.W.2d at 553.

The effect of the holding in *Cavnar* was two-fold: (1) it extended prejudgment interest to personal injury and wrongful death cases; and (2) it provided a uniform standard for determining the *amount* of prejudgment interest in all cases where the amount of interest was not controlled by operation of law. *Cavnar,* 696 S.W.2d at 553–54. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp.1986).

We hold that Barkley is entitled to recover prejudgment interest compounded daily from February 8, 1978, to July 9, 1985. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Vernon Supp.1986); *Allright Inc. v. Pearson,* 711 S.W.2d 686 (Tex.App.—Houston [1st Dist.] 1986, writ pending) (negligent damage to automobile); *City of Houston v. Wolfe,* 712 S.W.2d 228 (Tex.App.—Houston [14th Dist.] 1986, writ pending) (daily compounding in eminent domain proceeding); *McKinney v. Meador,* 695 S.W.2d 812 (Tex. App.—Tyler 1985, writ ref'd n.r.e.) (negligent damage to property); *Quintero v. Jim Walter Homes, Inc.,* 709 S.W.2d 225 (Tex.App.—Corpus Christi 1985, no writ) (DTPA).

The judgment of the trial court is reversed, and we render judgment that Barkley recover from IPC $95,996.15, representing 30% of $319,987.17 in damages proved, together with prejudgment interest at 10% compounded daily on $95,996.16 from February 8, 1978, to July 9, 1985, and 10% postjudgment interest from July 9, 1985, on the total amount of damages and prejudgment interest.