### INTERNATIONAL PROTEINS CORPORATION et al.

v.

### RALSTON–PURINA COMPANY et al.

No. C–6078.

Supreme Court of Texas.

Feb. 17, 1988.

Butler and Binion, Michael B. Schwartz and Andrew Wooley, Houston, for petitioners.

Boswell and Hallmark, Donald R. Hallmark, Houston, Umphrey, Swearingen and Eddins, Timothy W. Ferguson, Port Arthur, for respondents.

## OPINION

RAY, Justice.

The issue in this appeal is whether a defendant, who settles with the plaintiff and takes an assignment of the plaintiff's cause of action, may prosecute the plaintiff's original claims against the remaining defendants. The court of appeals held that under such an arrangement the settling defendant could pursue the original claims in the plaintiff's name. 722 S.W.2d 431. The effect is that a settling defendant may preserve contribution rights against non-settling defendants if the settling party takes an assignment of the plaintiff's cause of action. This is contrary to *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19 (Tex. 1987). We reverse the judgment of the court of appeals and render judgment that the settling defendant, as assignee of the original plaintiff, take nothing.

The present case arises from the sale of contaminated chicken feed to various poultry producers in 1978. Barkley Feed and Seed Company and Holmes Foods, Inc. (collectively referred to as "Barkley") purchased contaminated feed from International Proteins Corporation and its wholly owned subsidiary, Atlantic Shippers of Texas, Inc. (collectively referred to as "IPC"). IPC had purchased the feed for resale from the producer, Ralston–Purina Co. ("Purina"). Barkley sued Purina and IPC, alleging theories of products liability and negligence. Purina and IPC answered and filed cross-actions against one another, seeking indemnity or contribution.

Shortly after filing suit, Barkley settled with Purina. In the settlement agreement, Barkley released Purina and agreed to indemnify Purina from any further liability. The settlement agreement also contained an express reservation by Purina of any potential right to contribution or indemnity it might have against IPC.

Purina and IPC dispute whether or not the settlement agreement also included an assignment of Barkley's original cause of action to Purina. The court of appeals concluded that it did and such interpretation finds support in the subsequent conduct of Purina and Barkley.

Following settlement, Purina alone took the active role in prosecuting Barkley's claims against IPC. At trial, Purina assumed the burden of proving the damages suffered by the original plaintiff Barkley

and its own right to contribution from IPC. Although Barkley did not appear at trial, the case was submitted as though it had.

The case was tried to a jury which found IPC negligent and Purina liable in both negligence and products liability. The jury apportioned liability 70% against Purina and 30% against IPC. Regarding damages, however, the jury answered "0" when asked the amount of money necessary to reasonably compensate Barkley for the damages caused by the contaminated chicken feed. In its judgment, the trial court aligned Purina as plaintiff and IPC as defendant and rendered judgment that the plaintiff Purina take nothing.

Purina appealed, arguing that the record established as a matter of law that Barkley had sustained damages in the amount of $319,987.17. The court of appeals agreed, reversed the judgment of the trial court and rendered judgment that "Barkley recover from IPC $95,996.16, representing 30% of $319,987.15...." The judgment does not mention Purina by name, but was probably intended for its benefit because the court of appeals earlier recognized Purina to be the assignee of Barkley's cause of action and also because Purina was the only party who perfected an appeal from the trial court's judgment.

Throughout this appeal Purina has contended that it is the assignee of Barkley's cause of action. Without deciding whether the settlement agreement actually accomplished this purpose, we will assume that Barkley and Purina intended this result. With this fact assumed, the case reduces to a single issue. Can a settling joint tortfeasor preserve a right to reimbursement or contribution from a non-settling joint tortfeasor by taking an assignment of the common plaintiff's cause of action?

In Beech Aircraft Corp. v. Jinkins, 739 S.W.2d 19 (Tex.1987), this court held that a joint tortfeasor could settle only its proportionate share of a common plaintiff's cause of action. We said that a settling defendant did not have a right to contribution at common law, Duncan v. Cessna Aircraft Co., 665 S.W.2d 414 (Tex.1984), or under the comparative negligence statute, Tex. Civ.Prac. & Rem.Code Ann. § 33.001 et seq. (Vernon 1987), and could not create one by purchasing the plaintiff's entire cause of action. This is precisely what Purina argues it has done in the present case, although it chooses to define its right to reimbursement under the settlement agreement as a right of direct action rather than a right of contribution.

As a general rule a cause of action may be assigned, but it is contrary to public policy to permit a joint tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed. Under Jinkins, Purina could settle only its proportionate share of liability and could not preserve a right to contribution by taking an assignment of Barkley's cause of action.

The judgment of the Court of Appeals is reversed and judgment is rendered that Purina take nothing.