NUMBER 13-98-479-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


CORONADO PAINT COMPANY, INC. 

AND KTA-TATOR, INC.
, Appellants,


v.



GLOBAL DRYWALL SYSTEMS, INC. 

AND GLOBAL DRYWALL SYSTEMS, 

INC., AS ASSIGNEE OF BRIDGEPOINT 

CONDOMINIUMS - PHASE I
, Appellees.

___________________________________________________________________


On appeal from the 357th District Court


of Cameron County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Rodriguez, and Chavez(1)


Opinion by Justice Dorsey



 Appellants, Coronado Paint ("Coronado") and KTA-Tator, Inc.
("KTA"), appeal a money judgment entered after a jury found in favor of
Global Drywall Systems, Inc., both in its own capacity, and in its
capacity as assignee of Bridgepoint Condominiums.

Facts


 This case is about a faulty paint job. Bridgepoint Condominiums,
a high-rise condominium project in South Padre Island, Texas, hired
Global Drywall Systems, Inc. to paint the exterior of the condominium
project for $600,000.00. As part of the contract, Global provided certain
warranties to Bridgepoint. Global warranted the paint job for a five-year
period, and agreed to perform annual inspections and repairs. 
Additionally, if any defects in the paint job affected more than 1% of the
entire project, Global agreed to repaint the entire building.

 Bridgepoint also retained a company called KTA-Tator, Inc., an
engineering firm that specialized in paint applications and processes, to
prepare the specifications for the project. The specifications dictated
the types of paints and procedures to be used. KTA was also retained
to perform periodic inspections of the project. KTA was paid
$100,000.00 for its services. In accordance with KTA's specifications,
Coronado Paint Company supplied the paint for the project. Coronado
also provided a five-year warranty on the paint, subject to certain
exclusions. Coronado was paid approximately $24,000.00.

 Global completed the painting in October of 1992. The next year,
problems arose. The paint displayed visible peeling, flaking, blistering,
and corrosion. Bridgepoint notified both Global and Coronado Paint
about the problems. After examining the building, each blamed the
other. Coronado Paint said the problem was caused by Global's work,
and Global said Coronado's paint caused the problem. Neither repaired
the problem, and the building remained in the defective condition.

 In 1995, Bridgepoint sued Global for breach of contract and breach
of warranty. Global counterclaimed against Bridgepoint, and filed third-party actions against Coronado Paint and KTA. In late 1996, without
abandoning its claims against Global, Bridgepoint added similar claims
directly against Coronado Paint and KTA. Eventually, Bridgepoint (i.e.,
the "original" plaintiff) settled with Global (i.e., the "original" defendant). 
As part of the settlement, Bridgepoint assigned to Global all of its claims
against Coronado Paint and KTA.

 The case was tried in 1998. The trial court did not allow mention
of the assignment of Bridgepoint's causes of action to Global. Rather,
the case was tried as if Bridgepoint were still a party. The jury found
Coronado Paint and KTA liable for all the damage. It awarded to Global
$48,408.93 in actual damages and $388,681.25 in attorneys' fees. It
further awarded to Global as assignee of Bridgepoint's claim,
$240,000.00 in actual damages, $1.75 million in punitive damages, and
$131,528.29 in attorneys' fees. Both Coronado Paint and KTA
(collectively, "appellants") appeal from this judgment.

 Appellants contend that the assignment of Bridgepoint's claims to
Global was invalid because it violates public policy. At a minimum, they
argue, the trial court committed harmful error by refusing to allow the
jury to hear evidence regarding the assignment. We hold that the
assignment is void because it constituted a Mary Carter agreement,
banned by Elbaor v. Smith, 845 S.W.2d 240 (Tex. 1992), and violated
the joint tortfeasor exception to the general rule of free assignability of
causes of action, contravening International Proteins, Inc. v.
Ralston-Purina Co., 744 S.W.2d 932, 934 (Tex. 1988). See also Beech
Aircraft Corp. v. Jinkins, 739 S.W.2d 19 (Tex. 1987). Validity of the Assignment


 Generally, causes of action may be freely assigned. See State
Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 705­707 (Tex. 1996). 
But while the "[p]racticalities of the modern world have made free
alienation . . . the general rule, . . . they have not entirely dispelled the
common law's reservations to alienability, or displaced the role of equity
or policy in shaping the rule." Id. at 707. Thus, an assignment may be
invalidated by the courts if found to offend public policy. Id. (citing
Restatement (Second) of Contracts § 317(2)(b) (1981)). Historically,
"the difficulty of transferring a mere right [to pursue a cause of action]
was greatly felt when the situation . . . from which it sprung could not
also be transferred." Id. (citing Oliver W. Holmes, Jr., The Common Law
409 (1881).

 The Texas Supreme Court has held that several types of
assignments are invalid because they violate public policy. Those are
(1) an assignment of a cause of action that works to collude against an
insurance carrier;(2) (2) an assignment of a legal malpractice claim;(3) (3)
an assignment that creates a Mary Carter agreement;(4) (4) an
assignment of the plaintiff's cause of action to a joint tortfeasor of the
defendant;(5) and, (5) an assignment of interests in an estate that distorts
the true positions of the beneficiaries.(6) In all these cases, the evil
sought to be avoided is a distortion of the parties' positions so that they
have incentives not generally associated with their positions in the
litigation. Accord Elbaor, 845 S.W.2d at 249.

 The supreme court's rulings in Elboar v. Smith and International
Proteins, Inc. v. Ralston-Purina Co. are controlling. See Elboar v. Smith,
845 S.W.2d at 250; International Proteins, Inc., 744 S.W.2d at 934. In
International Proteins, the Texas Supreme Court held that a joint
tortfeasor may not take an assignment of a plaintiff's cause of action
against the other defendants as a part of the settlement of a lawsuit. 
International Proteins, 744 S.W.2d at 934. It stated that while "[a]s a
general rule a cause of action may be assigned, . . . it is contrary to
public policy to permit a joint tortfeasor the right to purchase a cause
of action from a plaintiff to whose injury the tortfeasor contributed." Id. 
We believe the Bridgepoint-to-Global assignment falls squarely within
this prohibition.

 We see no meaningful distinction between the alignment of the
parties in International Proteins and the alignment of Bridgepoint and
Global. Global argues that because Bridgepoint's original cause of
action against Global for breaching the painting contract sounded in
contract and warranty theories rather than tort theories, it cannot be a
joint tortfeasor with Coronado and KTA. We construe the rule in
International Proteins to apply not solely to joint "tortfeasors," but also
to joint wrongdoers, regardless of whether the claim sounds in tort or
contract theories, if the parties are alleged to have caused one
indivisible injury to the plaintiff.

 This assignment also runs afoul of the supreme court's prohibition
of Mary Carter agreements. In Elboar, the court declared Mary Carter
agreements to be "void as violative of sound public policy." Elbaor, 845
S.W.2d at 250. A Mary Carter agreement is an agreement whereby a
"settling defendant retains a financial stake in the plaintiff's recovery
and remains a party at the trial of the case." Id. (emphasis in original).(7) 
Calling Mary Carter agreements "inimical to the adversary system," the
court explained that they "pressure the 'settling' defendant to alter the
character of the suit by contributing discovery material, peremptory
challenges, trial tactics, supportive witness examination, and jury
influence to the plaintiff's cause." Id. at 248­49. Ultimately, Mary
Carter agreements "present to the jury a sham of adversity between the
plaintiff and one co-defendant, while these parties are actually allied for
the purpose of securing a substantial judgment for the plaintiff and, in
some cases, exoneration for the settling defendant." Id. at 249 (citing
June F. Entman, Mary Carter Agreements: An Assessment of
Attempted Solutions, 38 U. Fla. L. Rev. 521, 574 (1986)). The central
problem is the distortion that occurs to "the case presented before a
jury that came 'to court expecting to see a contest between the plaintiff
and the defendants [and] instead see[s] one of the defendants
cooperating with the plaintiff.'" Gandy, 925 S.W.2d at 710 (quoting
Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 9 (Spears, J.,
concurring)).

 The assignment from Bridgepoint to Global meets the definition of
a Mary Carter agreement set forth in Elbaor. Elbaor, 845 S.W.2d at 250. 
Global, the original defendant, settled with Bridgepoint, the original
plaintiff. The assignment clearly created a financial stake for Global in
Bridgepoint's recovery, satisfying the first prong of Elbaor. Also, while
Global and Bridgepoint dismissed their causes of action against each
other, Global remained a party in the case at trial.

 In Elbaor, the court explained that "[t]he participation requirement
is satisfied by the mere presence of the settling defendant as a party in
the case." Elbaor, 845 S.W.2d at 257, n.14. The trial court realigned
the parties after Bridgepoint dismissed its claims against Global, and
Global became--in a sense--both plaintiff and "co-plaintiff." That is,
Global became the plaintiff when it stepped into the shoes of
Bridgepoint as Bridgepoint's assignee. Global also became a plaintiff
in its own capacity after the realignment. However, the fact that the
parties were realigned does not change the fact that Global remained
a party who actively participated in the trial of the cause. We believe
this meets the Elboar "participation" requirement. Id. We hold that the
Bridgepoint-to-Global assignment falls within the prohibitions outlined
in Elboar. Because we find that the assignment is an impermissible
Mary Carter agreement which also violates the rule set forth in
International Proteins v. Purina, we hold it void. Having found the
assignment void, we now consider the proper disposition.

Disposition


 KTA and Coronado brought a motion for judgment nov that
requested the trial court to disregard the jury's answers to several
questions because the assignment from Global to Bridgepoint was
invalid as a matter or law. A court may render judgment non obstante
veredicto if a directed verdict would have been proper. Tex. R. Civ. P.
301. A directed verdict is proper if the substantive law does not permit
the plaintiff to recover on its cause of action. See Arguelles v. UT Fam.
Med. Center, 941 S.W.2d 255, 258 (Tex. App.--Corpus Christi 1996, no
writ). Thus, judgment non obstante veredicto is appropriate where the
court can determine as a matter of law that a claim or defense included
in the jury charge is or is not viable. 6 MCDONALD & CARLSON,
TEXAS CIVIL PRACTICE § 47.13 (2d ed. 1998). When the court submits
a question of law to the jury, the jury's answer may be disregarded as
immaterial. Spencer v. Eagle Star Ins. Co., 876 S.W.2d 154, 157 (Tex.
1994).

 The question of whether the assignment was invalid is a question
of law. See Vinson & Elkins v. Moran, 946 S.W.2d 381, 397 (Tex.
App.--Houston [14th Dist.] 1997, writ dism'd by agr.). Appellate courts
review pure questions of law de novo. See El Paso Natural Gas Co. v.
Minco Oil & Gas, Inc., 8 S.W.3d 309, 312 (Tex. 1999); Barber v.
Colorado Independent School Dist., 901 S.W.2d 447, 450 (Tex. 1995);
Matter of Humphreys, 880 S.W.2d 402, 404 (Tex. 1994). Global had no
right to recover for Bridgepoint's injury. The trial court erred by entering
judgment based on an invalid assignment in favor of Global as
assignee. In so doing, the trial court made an error of law that caused
the rendition of an improper judgment, and we, therefore, reverse. See
Tex. R. App. P. 44.1(a)(1).(8)
 

 When a plaintiff recovers as an assignee under an assignment
later found invalid, the appellate court should reverse and render a take
nothing judgment against that plaintiff. See Gandy, 925 S.W.2d at 696,
720. Accordingly, we render judgment that Global take nothing on the
causes of action it prosecuted as assignee of Bridgepoint. See Tex. R.
App. P. 43.3.

 One of the evils fostered by assignment of causes of action
between parties is the skewing of the dynamics of the trial, whereby a
defendant argues for high damages or a plaintiff seeks exoneration of
a defendant he has sued. Because we find that the error also probably
caused rendition of an improper judgment resolving the other claims at
issue in the case, we reverse the remaining portion of the suit and
remand to the trial court for further proceedings consistent with this
opinion. See Tex. R. App. P. 44.1(a)(1); see also Elbaor, 845 S.W.2d at
250­51 (stating that remedial measures cannot vitiate the harm caused
by the existence of a Mary Carter agreement); Scurlock Oil Co. v.
Smithwick, 724 S.W.2d 1, 4 (Tex. 1986) (holding that failure to disclose
the existence of a Mary Carter agreement to the jury is harmful error as
a matter of law); General Motors Corp. v. Simmons, 558 S.W.2d 855,
857-59 (Tex. 1977) (holding that failure to disclose the existence of a
Mary Carter agreement to the jury is harmful error as a matter of law),
overruled on other grounds by Duncan v. Cessna Aircraft Co., 665
S.W.2d 414, 427 (Tex. 1984). Because of our disposition, we do not
address appellants' remaining points.



 ______________________________

 J. BONNER DORSEY,

 Justice


Publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 22nd day of February, 2001.

1. Senior Justice Melchor Chavez assigned to this court by the Chief
Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann.
§ 74.003 (Vernon 1998).
2. See Gandy, 925 S.W.2d at 714.
3. See Zuniga v. Groce, Locke & Hebdon, 878 S.W.2d 313, 318 (Tex.
App.--San Antonio 1994, writ ref'd.).
4. See Elbaor, 845 S.W.2d at 250.
5. See International Proteins, Inc. v. Ralston-Purina Co., 744 S.W.2d
932, 934 (Tex. 1988); Beech Aircraft Corp. v. Jinkins, 739 S.W.2d 19
(Tex. 1987).
6. See Trevino v. Turcotte, 564 S.W.2d 682 (Tex. 1978).
7. In Elbaor, the court sought to "definitely define the requisite
elements of a Mary Carter agreement." Elbaor, 845 S.W.2d at 247. It
defined it in the broad terms stated above, but described an example of
a Mary Carter Agreement:


 A Mary Carter agreement exists, under our definition, when
the plaintiff enters into a settlement agreement with one
defendant and goes to trial against the remaining
defendant(s). The settling defendant, who remains a party,
guarantees the plaintiff a minimum payment, which may be
offset in whole or in part by an excess judgment recovered
at trial.


Id. The court did not limit its definition to that scenario.
8. This is not a case in which the complaining party failed to bring
the invalidity of the assignment to the attention of the trial court until
after verdict was rendered. See St. Paul Surplus Lines Ins. Co., Inc. v.
Dal-Worth Tank Co, Inc., 974 S.W.2d 51, 53 (Tex. 1998). The trial court
made at least two pre-trial rulings on that issue, and thus, had ample
opportunity to correct its error before the case was submitted to the jury
and in time to make an appropriate ruling without having to order a
new trial. See Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000);
Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999); St. Paul
Surplus Ins. Co., Inc., 974 S.W.2d at 53.