GLOBAL DRYWALL SYSTEMS,
INC., Petitioner,

v.

CORONADO PAINT COMPANY,
INC. and KTA—Tator, Inc.,
Respondent.

No. 01–0535.

Supreme Court of Texas.

Feb. 27, 2003.

Rehearing Denied June 5, 2003.

Manuel M. Vela, Harlingen, Henry J. Ackels, Ackels & Ackels, Robert J. Scott, Lawrence Lassiter, Scott & Scott, L.L.P., Dallas, for petitioner.

Roberta S. Dohse, Paul W. Nye, Chaves Gonzales & Hoblit, Corpus Christi, Eileen Marie Leeds, Willette & Guerra, L.L.P., Brownsville, Audrey Mullert Vicknair, Bracewell & Patterson, L.L.P., Corpus Christi, Barry Stephen Rabon, Nancy Hesse Hamren, Coats, Rose, Yale, Ryman & Lee, P.C., Houston, for respondent.

Justice ENOCH, joined by Justice O'NEILL and Justice SCHNEIDER, dissenting to the improvident grant.

The general rule in Texas is that causes of action are freely assignable.[1]  Excep-

tions to this rule are based on public policy concerns that, necessarily, must be narrowly circumscribed.[2]  Because the assignment in this case does not fall within any previously-articulated exception to the general rule, the Court performs a disservice by refusing to explain what other policy it apparently concludes is at work that precludes the original plaintiff in this case, Bridgepoint Condominiums, from freely assigning its claims to Global Drywall, one of the three original defendants. I therefore respectfully dissent to the denial of this petition as improvidently granted.

The simple question is whether Bridgepoint's assignment of its claims to Global was a Mary Carter agreement prohibited by *Elbaor v. Smith,*[3] or an assignment to a joint tortfeasor prohibited by *International Proteins Corp. v. Ralston–Purina Co.*[4] The court of appeals concluded that the assignment was both and reversed the trial court's judgment in Global's favor.[5]  But the court of appeals erred.

A Mary Carter agreement arises "when the settling defendant retains a financial stake in the plaintiff's recovery *and* remains a party at the trial of the case."[6] As we explained, a Mary Carter agreement exists "when the plaintiff enters into a settlement agreement with one defendant and goes to trial against the remaining defendant(s).  The settling defendant, who remains a party, guarantees the plaintiff a minimum payment, which may be offset in whole or in part by an excess judgment recovered at trial."[7]

---

1. *State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 707 (Tex.1996).

2. *See, e.g., id.* at 705–11; RESTATEMENT (SECOND) OF CONTRACTS § 317(2)(b) (1981).

3. 845 S.W.2d 240 (Tex.1992).

4. 744 S.W.2d 932 (Tex.1988).

5. 47 S.W.3d 28, 32–33.

6. *Elbaor,* 845 S.W.2d at 247 (emphasis in original).

7. *Id.*

The principal objection to Mary Carter agreements is that they "allow plaintiffs to buy support for their case."[8] That's because the settling defendant not only is often contractually required to participate in the prosecution of the plaintiff's claims against the remaining defendants, though ostensibly still a co-defendant, but also the settling defendant has a monetary incentive to ensure that the plaintiff succeeds in obtaining a sizable recovery.[9] In point of fact, such agreements present a "sham of adversity between the plaintiff and one co-defendant, while these parties are actually allied for the purpose of securing a substantial judgment for the plaintiff and, in some cases, exoneration for the settling defendant."[10]

Here unlike the Mary Carter circumstance, the plaintiff, Bridgepoint, assigned *all* its causes of action against the non-settling defendants to Global, not just part. Furthermore, it was the plaintiff, Bridgepoint, that actually paid for the settlement—$100,000 to Global. And although Bridgepoint remained in the case as a nominal plaintiff, our concern about Mary Carter agreements is over whether the *defendant*, not the plaintiff, remains in the case. As for Global, the defendant, it realigned itself before trial as a *co-plaintiff*. Finally, though Bridgepoint agreed with Global to provide its employees to testify in the litigation, Bridgepoint retained no financial stake in the outcome of the trial. Thus, it had no financial incentive to aid Global in recovering a large judgment. Bottom line, there was no "sham of adver-

sity." The jury was aware that Global had a financial interest in holding the other two defendants liable, and it could assess Global's testimony accordingly. Clearly, the Bridgepoint Global assignment does not meet the definition of a Mary Carter agreement, nor does it implicate the concerns articulated in *Elbaor*.

Regarding our decision in *International Proteins*,[11] we expressed no public policy that voids this assignment. In *International Proteins*, we relied on our earlier decision in *Beech Aircraft Corp. v. Jinkins*[12] to hold that a joint tortfeasor cannot take an assignment of a plaintiff's claim as part of a settlement agreement with the plaintiff and then prosecute that claim against a joint tortfeasor.[13] Our rationale was that such an arrangement does indirectly that which cannot be done directly—improperly preserve contribution rights against non-settling joint tortfeasors.[14]

Relying on *Jinkins*, we noted that a settling defendant could settle only its proportionate share of a common liability; it could not assert a claim for contribution at common law or by statute, and it could not recover contribution simply by purchasing the plaintiff's entire cause of action.[15] Thus, we concluded, "it is contrary to public policy to permit a joint tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed."[16]

In this case, the court of appeals recognized that Global was not a joint tortfeasor. The court of appeals nevertheless

**8.** *Id.* at 249.

**9.** *Id.*

**10.** *Id.* (quoting June F. Entman, *Mary Carter Agreements: An Assessment of Attempted Solutions*, 38 U. Fla. L.Rev. 521, 574 (1986)).

**11.** 744 S.W.2d at 932.

**12.** 739 S.W.2d 19 (Tex.1987).

**13.** *Int'l Proteins Corp.*, 744 S.W.2d at 934.

**14.** *Id.*

**15.** *Id.*

**16.** *Id.*

concluded that the rule in *International Proteins* applied to "joint wrongdoers" and thus voided the assignment.[17] But before this court of appeals' opinion, no Texas court has held that being a "joint wrongdoer," as opposed to a joint tortfeasor, is sufficient to invoke the rule in *International Proteins*. And assuming *International Proteins* meant what it said—that a joint tortfeasor cannot purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed—that is not the case here. As the court of appeals recognized, Global was not a joint tortfeasor.[18] Thus the assignment could not constitute an attempt by Global to recover contribution[19] from joint tortfeasors. The assignment therefore does not fall within *International Proteins'* prohibition.

The Bridgepoint–Global assignment is neither a prohibited Mary Carter agreement nor an improper preservation of contribution rights—the only grounds on which the court of appeals invalidated the assignment. Yet this Court, having granted the petition for review, now decides to deny review, effectively leaving this type of assignment void without an explanation. It has an obligation to explain what other public policy it now relies on to restrict the free assignability of claims. Surely the Court has a better reason than simply that it doesn't like the assignment in this case. Because the assignment is not void under the policies thus far articulated, I respectfully dissent.

---

**17.** 47 S.W.3d at 32.

**18.** *See id.*

**19.** *See* BLACK'S LAW DICTIONARY 329 (7th ed.); *see also Gen. Motors Corp. v. Simmons,* 558 S.W.2d 855, 859 (Tex.1977); TEX. CIV. PRAC. & REM.CODE § 33.015.