**WOODBINE ELECTRIC SERVICE, INC., et al., Appellants,**

v.

**William E. McREYNOLDS, et al., Appellees.**

No. 11–91–230–CV.

Court of Appeals of Texas, Eastland.

Aug. 27, 1992.

Rehearing Denied Aug. 27, 1992.

Melvin R. Wilcox, III, Peter L. Brewer, Smead, Anderson, Wilcox & Dunn, Longview, Craig Daugherty, Sammons & Parker, Tyler, for appellants.

William N. Hamilton, Kenneth M. Horwitz, Brad Dickenson, Vial, Hamilton, Koch & Knox, Dallas, for appellees.

### Opinion

DICKENSON, Justice.

Plaintiffs[1] sued their former accountant and his accounting firm,[2] alleging professional malpractice. Defendants moved for summary judgment on the basis of the two-year statute of limitations.[3] The trial court granted defendants' motion for summary judgment that plaintiffs take nothing. We reverse and remand.[4]

*Points of Error*

Plaintiffs argue in their first point of error that: "The trial court erred in granting appellees' motion for summary judgment." This point of error is sufficient under *Malooly Brothers v. Napier*, 461 S.W.2d 119 at 121 (Tex.1970):

> [To] allow argument as to all the possible grounds upon which summary judgment should have been denied.

Consequently, the other three points of error need not be discussed.

*Standards of Review*

The standards for reviewing a summary judgment are well established: the movants must show that there is no genuine issue as to any material fact and that, consequently, the movants are entitled to judgment as a matter of law; in deciding whether there is a disputed issue as to any material fact, the non-movants' summary judgment evidence will be taken as true; and every reasonable inference will be made in favor of the non-movants, with any doubts being resolved in their favor. See, e.g., *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 at 548 (Tex.1985).

*City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 at 678 (Tex. 1979), makes it clear that:

> With the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, the non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement, such as those set out in rules 93 and 94, and he must present summary judgment proof when necessary to establish a fact issue. (Emphasis in original)

---

1. Plaintiffs are Woodbine Electric Service, Inc., a commercial electric contracting company which does business in Kilgore, and its sole owners, Stanley A. and Rita McCubbin.

2. Defendants are William E. McReynolds, a Certified Public Accountant in Longview, and his professional corporation, William E. McReynolds & Company, Inc.

3. See TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986) which provides that the suit must be filed "not later than two years after the day the cause of action accrues."

4. This case was transferred from the Tyler Court of Appeals to this court pursuant to TEX. GOV'T CODE ANN. § 73.001 (Vernon 1988).

## Plaintiffs' Lawsuit

Plaintiffs' lawsuit was filed on May 27, 1988. Their trial pleadings [5] allege that "sometime in 1978 or 1979" their employee, Louise Bush,[6] began to embezzle funds from them and continued to embezzle funds for a period of years, "up through and including 1986," stealing more than $500,000. Plaintiffs allege that defendants were negligent in failing to discover the embezzlements by Bush, that defendants should have discovered the problem as early as 1979, and that this would have prevented the subsequent losses which plaintiffs suffered. Plaintiffs also allege that they did not discover defendants' negligence until "late 1987 or early 1988" and that suit was brought within two years of the date of their discovery of their cause of action against defendants. Plaintiffs also alleged that defendants "concealed records and material facts" up to and including December of 1987 and that this tolled the statute of limitations. Plaintiffs also argue that their suit is not barred by limitations because it was filed less than two years after the accountant-client relationship ended.

## Motion for Summary Judgment

Defendants' motion for summary judgment was filed on August 7, 1991.[7] The 26 page motion was supported by affidavits, deposition excerpts, and pleadings which were attached. Defendants state in their motion that "any and all alleged claims of Plaintiffs are barred by the applicable statutes of limitation." Defendants also state in their motion that "there is no genuine issue as to any material fact" and that they are "entitled to judgment as a matter of law."

Defendants claim that the following "undisputed facts" show that it is entitled to judgment as a matter of law. Defendants performed accounting, bookkeeping and tax services for plaintiffs from 1975 through 1986. Those services did not include any auditing procedures. Bush was employed by plaintiffs from 1978 until April 7, 1986. Part of the time, she was given blank checks which had been signed by Stanley McCubbin, and later she was given check-signing authority. Plaintiffs gave sole authority to Bush for dealing with the accountants. Bush prepared all of the bank statement reconciliations and supplied the figures to the accountants. On or about April 5, 1986, plaintiffs discovered discrepancies in the corporate bank statements and took the bank statements to defendants. Defendants "performed an analysis" of the bank statements that weekend and then notified plaintiffs that there was a "possible defalcation" by Bush. On April 7, Bush was confronted by plaintiffs, defendants, and plaintiffs' attorney. Bush admitted stealing "at least $10,000." Bush was subsequently indicted and convicted for this theft. This lawsuit was not filed until May 27, 1988, more than two years after plaintiffs learned of the embezzlement.

## Response to Motion for Summary Judgment

First, we will discuss defendants' contention that plaintiffs' response to the motion

---

5. The trial court granted leave for plaintiffs to file their second amended original answer (during a hearing on their motion for leave to file). After granting leave for defendants to file their amended pleadings and their untimely response to the defendants' motion for summary judgment, the trial court then held the summary judgment hearing when defendants declined the court's offer to postpone the summary judgment hearing.

6. On April 7, 1986, Bush admitted stealing "at least" $10,000. Plaintiffs contend that, even though they knew about some of their losses at that time, they did not discover their cause of action against defendants until many months later.

7. Plaintiffs were notified by certified mail that the hearing was set for October 4. Defendants failed to respond within the time allowed by TEX.R.CIV.P. 166a(c), "not later than seven days prior to the day of hearing"; however, the trial court granted leave for plaintiffs to file their response to defendants' motion for summary judgment during a hearing which was held immediately prior to the summary judgment hearing. The record of that hearing shows evidence which supports the trial court's implied finding of good cause for granting leave pursuant to Rule 166a(c).

for summary judgment was not "properly and timely filed" and that, since there was no written order granting leave to file, we must disregard the response and the affidavits which were attached. We disagree. The transcript contains a certified transcription by the official court reporter of the proceedings which occurred in open court in connection with the hearing on plaintiffs' motion for leave to file the late response and the amended pleading. The trial court granted leave for plaintiffs to file their amended pleadings, the response to the motion for summary judgment, and the affidavits which were attached to the response. The court offered to postpone the summary judgment hearing, but both sides wanted to proceed. It would be exalting form over substance to shut our eyes to the recorded proceedings which occurred in open court because there was no written order granting leave to file the amended pleadings and the response to the motion for summary judgment.

Plaintiffs argue in their response that there is a "genuine issue as to a material fact" as to when they knew, and also as to when they should have discovered, that the acts or omissions of their accountants "might constitute negligence." Stanley McCubbin's affidavit states in relevant part:

My name is STANLEY A. "TONY" McCUBBIN.... At all material times hereto ... I have been the president and chief executive officer of Woodbine Electric Service, Inc.

\* \* \* \* \* \*

Prior to 1978 Woodbine hired Louise Bush as a bookkeeper and gave her the authority to sign checks, pay bills, and perform other usual services of a bookkeeper. During the period of time from 1978 through April of 1986, Louise Bush worked closely with McReynolds' accounting firm providing them with documents, checks, checkbooks, check stubs, bank statements and other documents requested by the accounting firm and needed by them to do the various accounting services.

On April 5, 1986, my wife, Rita McCubbin, was attempting to computerize our corporate accounting matters and discovered that the checks would not balance with the checkbook and there seemed to be discrepancies between the amount of checks written and the stubs as recorded in the checkbook. She related this information to me and we contacted McReynolds and requested his assistance in resolving the discrepancies. He and his firm worked during that weekend and informed us they believed that Louise Bush had stolen money from the corporate accounts. On April 7, 1986, I confronted Mrs. Bush and she admitted to a limited theft. Mr. McReynolds continued to assist us in determining the amount of money stolen by Louise Bush and in obtaining an indictment and eventual conviction by guilty plea of Mrs. Bush.

Mr. McReynolds and his firm continued to serve as the accountant for Woodbine and myself up through and including the fall of 1987 (some twenty months subsequent to the discovery of the theft). The CPA/client relationship continued during that period of time and Mr. McReynolds was paid for his services. At no time during such twenty-month period did I have reason to become suspicious, aware of or believe that McReynolds had failed to do anything which contributed to or facilitated Mrs. Bush in the theft of monies from my company.

In late 1987, an accountant hired for the purpose of preparing and filing amended tax returns and assisting in the Estate of Agnes Mae McCubbin, raised certain questions concerning the failure of the accountants to discover the theft by Mrs. Bush. I immediately began an investigation with the assistance of this accountant. We requested the records from Mr. McReynolds which he refused to provide until December, 1987, when I was required to rent a copy machine and go to his office to make copies of the records.

There is also an affidavit from Rita McCubbin which confirms the statements made by her husband. Mrs. McCubbin states in her affidavit that she did not

become involved in the company bookkeeping until January of 1978 when she began to "computerize the books and records." Rita McCubbin states that she became suspicious on April 5, 1986, that Bush had stolen money from the company. She contacted their accountant, McReynolds, for his assistance in determining whether there had been a theft. She further swore that at no time during the following twenty-month period did she "become suspicious, aware of or believe" that McReynolds or his firm failed to do anything which contributed to the theft of monies by Bush. She also confirms her husband's statement that defendants refused to provide plaintiffs with copies of their records until December of 1987 when they rented a copy machine and went to the accountants' office to make copies of the records. She also swore:

> At no time prior to this investigation in late 1987 and early 1988 did I believe or have reason to believe that Mr. McReynolds had engaged in activities or conduct which might have caused or contributed to cause the theft of funds by Louise Bush.

### Discovery Rule

The Supreme Court held in *Willis v. Maverick*, 760 S.W.2d 642 at 646 (Tex. 1988):

> [T]he statute of limitations for legal malpractice actions does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action.

The reason for applying the "discovery rule" to legal malpractice actions was the "fiduciary relationship" which exists between an attorney and a client. Likewise, there can be a "fiduciary relationship" between a certified public accountant and a client. Willis v. Maverick notes that, supra at 645:

> The client must feel free to rely on his attorney's advice. Facts which might or-

dinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved.... Further, breach of the duty to disclose is tantamount to concealment.

See and compare *Russell v. Campbell*, 725 S.W.2d 739 at 747 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), where the "discovery rule" was applied to a suit [8] against a certified public accountant.

### Decision

We hold that there is a material fact issue as to when plaintiffs actually knew or should have known that their certified public accountant might have been negligent in failing to discover the embezzlements by plaintiffs' bookkeeper. Even now, defendants deny any acts or omissions of negligence. While the jury may well agree with defendants that plaintiffs waited too long to file their lawsuit, this question cannot be resolved by summary judgment.

The summary judgment is reversed, and the cause is remanded to the trial court for trial on the merits.

---

**8.** The three theories of liability which were submitted to the jury were professional negligence, breach of fiduciary duty, and the Deceptive Trade Practices Act.