**Willard E. BROWN, Estoril Producing Corporation, et al., Appellants,**

v.

**KPMG PEAT MARWICK, Appellee.**

**No. 08–92–00324–CV.**

Court of Appeals of Texas,
El Paso.

April 28, 1993.

Rehearing Overruled June 9, 1993.

Thomas A. Albright, Scott, Douglass & Luton, L.L.P., Austin, Thomas V. Murto, III, Law Offices of R. Jack Ayres, Jr., Cary Schachter, Vikram Chandhok, Conant Whittenburg Whittenburg & Schachter, Dallas, for appellants.

Stewart H. Thomas, Karen F. Gray, Timothy W. Mountz, Locke Purnell Rain Harrell, Dallas, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

### OPINION

BARAJAS, Justice.

This is an appeal from the entry of two summary judgments in an accounting malpractice case. The trial court entered summary judgment in favor of Appellee,

KPMG Peat Marwick, dismissing all claims asserted by the limited partners of a partnership. A second summary judgment was entered dismissing all cross-claims asserted against the Appellee by the general partner of the limited partnership. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

In 1980, 43 limited partner investors (the "Partners") entered into an agreement of limited partnership ("Partnership Agreement") named EPC 1980–1 (the "Partnership"). The Partnership Agreement, formed under the law of the State of Texas, named Estoril Producing Corporation as the managing partner and Rotan Mosle Energy as an additional general partner. The limited partnership certificate filed with the Texas Secretary of State defined the purposes of the Partnership to include "operations and productions of oil, gas and minerals and all things incident thereto." Both the prospectus used to solicit limited partners and the Partnership Agreement identified the oil and gas operations to be conducted by the partnership to include "installing, ... processing, gathering, and/or transporting facilities to produce, process, gather and/or transport any oil or gas produced from any well on a Prospect...."

Estoril operated a substantial number of leases in the N.W. Tecumseh Field, located in the State of Oklahoma, where the Partnership was the largest working interest owner in the leases operated by Estoril, and as a result, had the most oil and gas to sell. Estoril initially gathered the Partnership's gas and sold it to Public Utilities Service Company at approximately $1.28 per MMBTU. It later learned that Oklahoma Natural Gas Company ("ONG")

would buy gas at twice that amount, or more. Estoril contracted and agreed with Ed Moses and counter-defendant Bill Sumner to form a separate partnership (counter-defendant Pott County Partnership ["Pott"]) whose purpose was to (1) acquire the existing gas gathering system, (2) build a new system and/or add to the existing system and (3) use the system to gather gas that Pott would buy at one price from the Partnership, and others, and then sell to ONG for a profit. In furtherance of the Pott agreement, Estoril committed the Partnership's gas to Pott and authorized Pott to commit the Partnership's gas for sale to ONG. A contract was negotiated for the sale of the Partnership's gas to ONG.[1] In essence, Estoril sold itself the Partnership gas and later resold it at a higher price to ONG, thereby realizing significant profits.[2]

In addition to the above, Estoril entered into an agreement with co-defendant James Charles Hollimon and his company, Heritage Processing, Inc. and Magnum V Energy to enter into a joint venture for the construction and operation of a plant to process gas produced from the N.W. Tecumseh Field, including the Partnership gas. Estoril committed the Partnership's gas for processing at the plant and in exchange, became a 10 percent owner of the Heritage plant and all associated gas processing contracts, including that with the Partnership. Under the terms of the Partnership Agreement, Estoril was required to engage independent certified public accountants to annually audit the financial statement of the Partnership and to report to the Partners the results of such audit. Estoril retained the services of Trott & Co. to perform the

1. The record shows that in May 1981, Moses and Sumner incorporated counter-defendant Bethel Gas Company to serve as Estoril's partner in Pott. Subsequently, Bethel, as an undisclosed agent for Pott, entered into a gas purchase contract with ONG for the sale of the Partnership's gas.

2. After the creation of Pott for the purchase, gathering and sale of gas, Estoril devised a similar arrangement for the sale of the partnership's oil. Estoril entered into an agreement with Bethel for the construction and operation of a

crude oil gathering system. In 1981, the principals in Bethel incorporated co-defendant Drayco Pipeline, Inc. which in turn entered into a partnership agreement for the formation of counter-defendant Shawnee Pipeline Co. Estoril sold the partnership oil to an oil purchaser, who immediately resold it at the wellhead to Shawnee. Shawnee then transported the oil over the gathering system to the initial purchaser's pipeline, where the initial purchaser repurchased the oil from Shawnee at a higher price.

audit for the year ending December 31, 1980. It engaged Peat Marwick to perform the audit for 1981, then it retained Trott & Co. and its successor company to perform the audits for the Partnership for the years 1982 through 1988.

The Partners assert that Estoril's activities with the various other entities involved in the distribution of the Partnership's oil and gas were related party transactions which should have been reported under principles and standards generally recognized by the accounting profession.[3]

## II. PROCEDURAL HISTORY

Estoril Producing Corporation initiated the action below against the Partners seeking a declaratory judgment regarding its obligations to the Partners. The Partners filed a counterclaim against Estoril and twenty-two additional counter-defendants, including KPMG Peat Marwick, alleging breach of fiduciary duty, breach of contract, fraud, civil conspiracy and accounting malpractice and also seeking a declaratory judgment, an audit and an accounting. The Partners allege that Estoril and numerous other counter-defendants had secretly misappropriated economic opportunities of the Partnership in 1981, resulting in damages to the Partnership. The Partners allege that Peat Marwick's performance in auditing the financial statements of the Partnership for 1981 constituted professional malpractice, negligence, negligence per se, negligent misrepresentation and gross negligence. No claims of fraud, conspiracy or knowing misconduct are raised against Peat Marwick.

Peat Marwick moved for and obtained summary judgment on the claims asserted by the Partners against it. Among the grounds specified in the motion for summary judgment was the defense of limitations; however, the trial court did not specify on what basis the motion for summary judgment was granted. After obtaining summary judgment on the Partners' claims, Peat Marwick moved for summary judgment on the cross-claims filed against it by Estoril, arguing that the exoneration by summary judgment from the claims by the Partners automatically relieved Peat Marwick from any claims for breaches of duty to Estoril. It is from the granting of the above two motions for summary judgment that the instant appeal ensues. All other claims in the suit have been either settled and dismissed or severed from this action, making the summary judgments final and appealable.

## III. DISCUSSION

### A. Standard of Review

■ The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Company*, 690 S.W.2d 546, 548 (Tex.1985); *Hernandez v. Kasco Ventures, Inc.*, 832 S.W.2d 629 (Tex. App.—El Paso 1992, no writ); *Marsh v. Travelers Indemnity Company of Rhode Island*, 788 S.W.2d 720 (Tex.App.—El Paso 1990, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to the required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex. 1970).

■ In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *Stoker v. Furr's, Inc.*, 813 S.W.2d 719, 721 (Tex.App.—El Paso 1991, writ denied). Where the defen-

---

**3.** The applicable standards include Generally Accepted Accounting Principles. These standards require disclosures in reporting entities' financial statements of "material related party transactions."

dants are the movants and they submit summary evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *Perez*, 819 S.W.2d at 471; *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

The above standard of review is altered when the movant relies on an affirmative defense to avoid liability. Instead of merely demonstrating the lack of a fact issue as to one element of the non-movants claim, the movant must establish each element of his defense as a matter of law. *Munoz v. Gulf Oil Company*, 693 S.W.2d 372, 373 (Tex.1985); *Republic Bankers Life Insurance Company v. Wood*, 792 S.W.2d 768, 776 (Tex.App.—Fort Worth 1990, writ denied). Thus, when moving for summary judgment based on the running of limitations, the defendant must show that as a matter of law, the suit is barred by limitations. *A.C. Collins Ford, Inc. v. Ford Motor Company*, 807 S.W.2d 755, 759 (Tex.App.—El Paso 1990, writ denied). Moreover, a defendant seeking summary judgment on the basis of limitations must prove when the cause of action accrued and must further negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990).

## B. Summary Judgment against the Partners

### 1. The Summary Judgment

The Partners alleged that Peat Marwick's failure to disclose Estoril's "related-party transactions" in connection with its audit of the Partnership's 1981 financial statements constituted professional malpractice, negligence, negligence *per se* and gross negligence, and rendered its opinion a negligent misrepresentation. Peat Marwick moved for summary judgment on the following four grounds: (1) Peat Marwick's conduct did not proximately cause any damage to the Partners; (2) the Partner's claims against Peat Marwick were barred by the two-year statute of limitations; (3) a violation of professional accounting standards cannot constitute negligence *per se;* and (4) Peat Marwick owed no fiduciary duty to the Partners which could give rise to a claim for breach of fiduciary duty. Because the trial judge failed to articulate his reasons for granting a summary judgment, this Court must determine whether any of the grounds urged in Peat Marwick's motion will support disposition by summary judgment.

### 2. Statute of Limitations and the Discovery Rule

The parties do not dispute that the two-year statute of limitations applies to suits for accounting negligence and malpractice. *Eagle Properties, Ltd. v. Scharbauer*, 816 S.W.2d 559, 562 (Tex.App.—El Paso 1991, writ denied); Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986). The parties also agree that the Partners' claim against Peat Marwick accrued in 1982.[4] Thus, unless the discovery rule tolled limitations, the Partners' suit against Peat Marwick, filed in 1989, is barred by the statute of limitations. The application of the discovery rule to suits against auditors for accounting malpractice is a preliminary issue in determining whether Peat Marwick was entitled to summary judgment on the basis of limitations.

As the Texas Supreme Court has stated,

Limitations statutes afford plaintiffs what the legislature deems a reasonable

---

**4.** The cause of action accrued when the Partners could seek a judicial remedy. This occurred when the Partners were damaged by Peat Marwick's alleged negligence. Since Estoril began to profit from the self-dealing transactions in 1982, that was the year in which the Partners' cause of action accrued. *Atkins v. Crosland,* 417 S.W.2d 150 (Tex.1967) (claim of accounting negligence accrued when Internal Revenue Service assessed plaintiff with tax deficiency, not at time of negligent act); See *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990) (fact that damages continue to build does not prevent commencement of limitations period).

time to present their claims and protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise. The purpose of a statute of limitations is to establish a point of repose and to terminate stale claims. [Citations omitted].

*Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990). The discovery rule, the legal principle which fixes the date at which the statute of limitations begins to run at the date on which the plaintiff discovers or should have discovered his injury, is limited to the types of claims described as "inherently undiscoverable." *Johnson v. Abbey*, 737 S.W.2d 68, 69 (Tex.App.—Houston [14th Dist.] 1987, no writ).

■ To date, the Texas Supreme Court has not applied the discovery rule to accounting malpractice claims. In *Eagle Properties, Ltd. v. Scharbauer*, 816 S.W.2d at 559, 562, this Court, without discussing the issue, appeared to apply the discovery rule to claims for negligence and DTPA violations pressed against an accountant. Though the Partners urge that this analysis was required by the Supreme Court's decision in *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 725 (Tex. 1990), which remanded the cause to this Court for determination of the applicability of the statute of limitations, a careful reading of the Supreme Court's language reveals otherwise. The Court stated:

We therefore remand this cause to the court of appeals to determine which, if any, of Branum's claims other than fraud against TCB, First Republic, and Peat Marwick are barred by the relevant statutes of limitations, and whether fact questions existed, sufficient to withstand summary judgment, regarding the date Branum knew or should have known of the actionable conduct, *where necessary for determination of the statute of limitations questions.* [Emphasis added].

*Eagle Properties, Ltd.*, 807 S.W.2d at 725. Clearly, the Supreme Court did not express an opinion on whether the discovery rule applied to any or all of the plaintiff's claims in that case. Since a portion of the plaintiff's claims were based on DTPA, this Court was required to apply the discovery rule. TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1987). We held that even if the discovery rule applied, limitations barred the plaintiffs' claims. *Eagle Properties, Ltd.*, 816 S.W.2d at 562. This Court did not decide in *Eagle Properties* whether the discovery rule pertains to accounting malpractice claims.

In a recent case, the Eastland Court of Appeals held that the discovery rule applies to suits for accounting malpractice. *Woodbine Electric Service, Inc. v. McReynolds*, 837 S.W.2d 258, 262 (Tex.App.—Eastland 1992, no writ). The court relied upon an analogy to legal malpractice claims, and the existence of a fiduciary relationship between an accountant and his client. *Id.* at 262, citing *Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex.1988) (holding that discovery rule applies to legal malpractice actions). Such an analysis is inappropriate for a case such as the one at bar, in which the party seeking relief is not the client of the accountant. The Partners' suit was filed against an auditor, whose relationship to the Partners differs substantially from the accountant/client, or the attorney/client, relationship. The U.S. Supreme Court has recognized this distinction. See *United States v. Arthur Young & Company*, 465 U.S. 805, 817–18, 104 S.Ct. 1495, 1502–03, 79 L.Ed.2d 826, 836 (1984) (work-product immunity for attorney papers not applicable to independent auditor's workpapers, partially based on auditor's different relationship to client).

■ The California Supreme Court's opinion in *Bily v. Arthur Young & Company*, 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 55–58, 834 P.2d 745, 749–52 (1992), which discussed the nature of the auditing function of public accountants, may shed light upon the relationship between auditors and non-

clients who rely upon their audits.[5] That court explained that the auditor typically reviews financial statements prepared by his client, and may examine sample transactions or particular pieces of data to determine the validity of the statement as a whole. However, the auditor "rarely, if ever, examines every accounting transaction in the records of a business." *Bily*, 834 P.2d at 749. In a sense, the auditor is at the mercy of his client in the preparation of an audit, and may be unable to uncover information disguised by the client. Nonetheless, the auditor prepares a report or opinion which generally vouches for the validity of the financial statements. Third parties rely upon the auditor's report as verification that the financial statements are free of misrepresentations. It is this reliance which forms the basis of an auditor's liability, though jurisdictions differ on the groups of plaintiffs whose reliance on financial statements will provide them with a cause of action against a negligent auditor.[6] See *Blue Bell v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 411–12 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Shatterproof Glass Corporation v. James*, 466 S.W.2d 873, 880 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.); See generally, *Bily*, 834 P.2d at 752–60.

Because this suit does not revolve around the typical accountant/client relationship, this Court chooses not to blindly follow the Eastland Court's decision that the discovery rule applies to suits for accounting malpractice. The broad term "accounting malpractice" includes a variety of services which may not be treated identically for purposes of the discovery rule. The auditor/non-client relationship may justify a different result. Accordingly, we must determine whether justice demands that the discovery rule be applied to claims of non-client third parties against auditors. This decision will be controlled by a determination of whether such claims are "inherently undiscoverable." *Johnson v. Abbey*, 737 S.W.2d 68, 69–70 (Tex.App.—Houston [14th Dist.] 1987, no writ).

Peat Marwick presented unrebutted summary judgment evidence demonstrating that Estoril made no efforts to conceal its related-party transactions from the Partners. Those transactions were in fact discovered by one limited partner, McWhirter, who is not a party to this suit. It would be illogical to hold that the Partners' claims were "inherently undiscoverable" in the face of evidence that one limited partner did discover all the relevant details and that Estoril made no effort to conceal them. The Partners have presented no reason, and we see none, to hold that an auditee's financial dealings or errors in financial statements are inherently undiscoverable. Therefore, we find that justice does not require the imposition of the discovery rule when an auditor is sued for negligence by third parties who rely upon the audited financial statements.

The policy considerations behind the statute of limitations also lean in favor of protecting the auditor in a situation like the one at bar. An auditor is entitled to a point of repose beyond which claims for negligence in the performance of an audit will be stale. Otherwise, the auditor may find himself in the position feared by Justice Cardozo in an early case of auditor negligence: "[A] thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corporation v. Touche*, 255 N.Y. 170, 174 N.E. 441, 444 (1931).[7] We decline

---

5. That case also contains an excellent discussion of the various theories of liability applied to auditors sued by third parties. *Bily*, 834 P.2d at 752–60.

6. It is for this reason that Peat Marwick's claim that it had no fiduciary relationship with the Partners will not support its summary judgment. An auditor's liability for negligence is not premised upon such a relationship, but

upon the reliance of third parties upon his work. See *Blue Bell v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 411–12 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Shatterproof Glass Corporation v. James*, 466 S.W.2d 873, 880 (Tex.Civ. App.—Fort Worth 1971, writ ref'd n.r.e.).

7. The dilemma was resolved in that case by a decision that the auditor would not be liable absent some privity of relationship between the

to enforce a discovery rule which would prevent auditors from relying upon the statute of limitations, designed to afford protection against such infinite liability.

We emphasize the limited nature of this holding. We do not hold that the discovery rule never applies in suits for accounting malpractice. We hold only that the rule does not toll limitations in a suit filed against an auditor by a non-client who charges negligence in the performance of an audit. Since we find that the discovery rule does not apply, the Partners' 1989 suit for accounting malpractice, allegedly committed in 1982, was barred by the statute of limitations. Peat Marwick's summary judgment against the Partners is affirmed, on the basis that the Partners' suit was not filed within the time provided by the statute of limitations.

## C. Summary Judgment against Estoril

### 1. The Summary Judgment

The trial court first granted Peat Marwick's summary judgment against the Partners. Peat Marwick then moved for summary judgment against Estoril on these grounds:

 1. The summary judgment of February 5, 1992, dismissing all claims against Peat Marwick alleged by the limited partners of EPC 1980–1 Ltd. also extinguishes all claims for contribution and/or indemnity against Peat Marwick alleged by the Cross–Claimants.

 2. There is no genuine issue of material fact, and Peat Marwick is entitled to summary judgment as a matter of law.

The trial court granted Peat Marwick's Motion for Summary Judgment as to "all claims asserted against KPMG Peat Marwick" by Estoril.

### 2. Points of Error

Estoril first argues that the trial court erred in dismissing its contribution and indemnity claims against Peat Marwick. In Estoril's second point of error, it claims to have asserted direct liability claims against Peat Marwick which should not have been dismissed along with its claims for contribution and indemnity. We address these points in reverse sequence.

### 3. Independent Claims

 ■■■■ In its second point of error, Estoril claims that the trial court erred in granting summary judgment in favor of Peat Marwick because Estoril's claims against Peat Marwick were not limited to contribution and indemnity, but included direct liability claims as well. In its First Amended Cross Claim, Estoril alleged its cause of action against Peat Marwick in this manner:

If, however, Estoril is found liable to counter-plaintiffs or intervenors, then Estoril is entitled to indemnity, contribution, or direct recovery from the Cross-claim Defendants.

 3. Peat, Trott, and Coopers performed professional accounting services in connection with the preparation and audit of financial statements for EPC 1980–1. Estoril, as managing general partner of EPC 1980–1, relied upon the skill and knowledge of Peat, Trott, and Coopers to aid in the preparation of the financial statements and to audit them.

 4. Coopers, Trott, and Peat Marwick had a duty to Estoril to assure that the financial statements complied with gen-

---

plaintiff and the auditor. *Ultramares Corporation v. Touche,* 255 N.Y. 170, 174 N.E. 441, 448. Later New York cases require that an auditor demonstrate by some conduct an understanding that a known party will rely upon financial statements to hold the auditor liable for errors in the statements. *Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co.,* 79 N.Y.2d 695, 586 N.Y.S.2d 87, 597 N.E.2d 1080 (1992); *Credit Alliance Corporation v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 493 N.Y.S.2d 435, 443, 483 N.E.2d 110, 118 (1985). In Texas, liability may be imposed upon an auditor for negligence regardless of a privity relationship, so long as the plaintiffs rely upon the audited statements and the auditor intended to supply the audit to the plaintiffs, or knew or should have known that his client intended to do so. See *Blue Bell v. Peat, Marwick, Mitchell & Co.,* 715 S.W.2d 408, 411–12 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Shatterproof Glass Corporation v. James,* 466 S.W.2d 873, 880 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.). This rule is derived from the Restatement (Second) of Torts, § 552 (1938).

erally accepted accounting principles and the requirements of the EPC 1980–1 partnership agreement. Estoril believes that the financial statements accurately reflect the operating results and financial position of EPC 1980–1 in each year and that they properly disclose all matters that are required to be disclosed under the partnership.... Thus, if the counter-plaintiffs or intervenors are correct in their allegations, Estoril is entitled to indemnity, contribution, or independent direct recovery from Peat, Trott, Coopers, or one or more of them for sums, if any, required to be paid to counter-plaintiffs or intervenors.

Pleadings should give fair and adequate notice of the facts on which the pleader relies in order that the adverse party may properly prepare a defense. *George A. Fuller Company v. Carpet Services, Inc.,* 823 S.W.2d 603, 605 (Tex.1992); *Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 636 (Tex.1982). A substantive reading of the pleading filed by Estoril reveals that Estoril did not have a claim of direct liability against Peat Marwick. Its claims are clearly conditioned upon liability to the Partners; Estoril's pleading seeks sums that Estoril might have to pay to the Partners, emphasizing the nature of its claim as one of indemnification and contribution. The language of the pleading is not sufficient to give Peat Marwick notice that a direct claim is being asserted by Estoril, in order to permit Peat Marwick to adequately prepare a defense. Estoril's argument that the trial court dismissed independent claims of direct liability against Peat Marwick is not supported by the record. We hold that Estoril asserted only a contribution claim against Peat Marwick. Estoril's second point of error is overruled.

## 4. Contribution Claim

 The record reflects that subsequent to the entry of summary judgment against Estoril, Estoril settled the Partners' claims against it. It is well-settled Texas law that a settling tortfeasor is not entitled to contribution from non-settling tortfeasors. See *International Proteins Corporation v. Ralston–Purina Compa-*

*ny,* 744 S.W.2d 932, 934 (Tex.1988); *Beech Aircraft Corporation v. Jinkins,* 739 S.W.2d 19 (Tex.1987). Therefore, even if this Court reversed the summary judgment against Estoril, it could have no contribution claim against Peat Marwick. When a judgment debtor voluntarily pays his debt to the judgment creditor, that debtor will have no right to appeal the judgment. Payment of the judgment renders the appeal moot. *Continental Casualty Company v. Huizar,* 740 S.W.2d 429, 430 (Tex. 1987); *Highland Church of Christ v. Powell,* 640 S.W.2d 235, 236 (Tex.1982). Likewise, a tortfeasor's settlement with the injured party will render his claim for contribution from a joint tortfeasor moot. See *State Department of Highways and Public Transportation v. Pizana,* 776 S.W.2d 762 (Tex.App.—Corpus Christi 1989, no writ) (appeal by contribution-seeking tortfeasor of joint tortfeasor's summary judgment dismissed after injured party's suit against appealing tortfeasor dismissed with prejudice).

In *Threeway Constructors, Inc. v. Aten,* 659 S.W.2d 700, 701 (Tex.App.—El Paso 1983, no writ), this Court declined to dismiss as moot the appeal of tortfeasors challenging a trial court's refusal to permit them to file an action for contribution against a third tortfeasor, notwithstanding the fact that the appellants had settled with the injured party. We wrote that the settlement ended the tortfeasors' controversy with the injured plaintiff, but not their claim against the third tortfeasor. The refusal to dismiss the appeal as moot was based upon the conclusion that the settling appellants had a live claim for contribution from their joint tortfeasor. *Threeway Constructors, Inc.,* 659 S.W.2d at 701. The Supreme Court has since made it clear that no such claim may exist. See *International Proteins Corporation,* 744 S.W.2d at 932, 934; *Beech Aircraft Corporation,* 739 S.W.2d at 19; *Duncan v. Cessna Aircraft Company,* 665 S.W.2d 414 (Tex.1984); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 819 (Tex.1984). Since *Threeway Constructors* was decided prior to the Texas Supreme Court's series of cases making clear that settling tortfea-

sors are not entitled to contribution from nonsettling tortfeasors in Texas, it does not control the resolution of this case.

 When there has ceased to be a controversy between the litigating parties, the decision of an appellate court would be a mere academic exercise. When events occur after a judgment which renders the issue before the appellate court moot, the court may not decide the appeal. See *General Land Office of the State of Texas v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 570–71 (Tex.1990) (plaintiff's voluntary nonsuit filed after entry of temporary injunction, during pendency of accelerated appeal, rendered appeal moot and required dismissal). This Court may not render an advisory opinion. *Id.; County of El Paso v. Ortega,* 847 S.W.2d 436, 442 (Tex.App.—El Paso 1993, no writ). In the case at bar, Estoril's claim for contribution from Peat Marwick may not be asserted since Estoril settled with the Partners. No claim for contribution from Peat Marwick may survive that settlement. Therefore, the appeal from the summary judgment on that contribution claim is moot. When an appeal becomes moot, the appellate court is required to dismiss the cause of action, not merely the appeal. *City of Garland v. Louton,* 691 S.W.2d 603, 604–05 (Tex.1985). Accordingly, Estoril's contribution claim against Peat Marwick is dismissed.[8]

We affirm the judgment of the trial court in favor of Peat Marwick against the Partners, and dismiss Estoril's claim for contribution against Peat Marwick.

---

**8.** We also note that the trial court's granting of the summary judgment, if error, was harmless error, since by virtue of its settlement with the Partners, Estoril could not recover contribution from Peat Marwick. If this Court were not to dismiss the cause as moot, we would be re-quired to affirm the trial court's judgment under Texas Rule of Appellate Procedure 81(b)(1), which provides that error is not reversible unless it was reasonably calculated to cause and probably did cause rendition of an improper judgment.