Thomas AIRINGTON, II, Appellant,

v.

Maria JUHL, et al., Appellees.

No. 08–93–00323–CV.

Court of Appeals of Texas,
El Paso.

July 14, 1994.

Rehearing Overruled Aug. 17, 1994.

## OPINION

BARAJAS, Chief Justice.

The opinion dated April 14, 1994 is hereby withdrawn, and the following is the opinion of this Court.

This is an appeal in a case involving injuries sustained by a law enforcement officer during an abortion protest. Appellant, Thomas Airington, II, appeals from a summary judgment granted in favor of Appellees Maria Juhl, et al., in a negligence case in which Appellant, a police officer, sought to recover for personal injuries alleged to have been caused by Appellees.[1] In four points of error, Appellant argues that the trial court erred in granting summary judgment. We reverse the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

The record shows that on September 16, 1989, Appellant, an officer with the El Paso Police Department, was called to the scene of a demonstration by abortion protesters at Reproductive Services Clinic, located in El Paso. The demonstrators, including Appellees, were attempting to hinder the activities of the clinic by blocking access to the clinic. Appellant and other police officers at the scene ordered the demonstrators to move, but some members of the group refused to cooperate and became limp, requiring the police officers to physically remove them. Appellant alleges that in the course of lifting one such demonstrator, he injured his back.

On September 13, 1991, Appellant filed suit in Cause No. 91–10531 against Appellees seeking to recover for his injuries. Also named as defendants in the action were Sylvia Salazar and Samuel Oppenheim. Salazar is the person Appellant was actually attempting to lift when his back was injured, and the record shows no dispute among the parties as to this fact. Oppenheim was one of the organizers of the demonstration that occurred on September 16, 1989.

C. Jeff Minor and Gordon Stewart, Semko & Minor, P.C., El Paso, for appellant.

Mary W. Craig, Dudley, Dudley, Windle & Stevens, L.L.P., Larry W. Hicks, Monty Kimball, Hicks & Associates, Keith Myers, Mounce & Galatzan, El Paso, Elizabeth L. German, Brown & German, Albuquerque, NM, and Cynthia S. Anderson and Ruben Robles, Kemp, Smith, Duncan & Hammond, El Paso, for appellees.

Before BARAJAS, C.J., and LARSEN and McCOLLUM, JJ.

1. The record shows that summary judgment was granted in favor of Appellees Maria Juhl, Beech Landry, Martha Arellano, Richard D. Weiss, Betty F. Jameson, James Gose, Aileen Gose, Grace Madrid, Barbara Shepard Baldwin f/k/a Barbara Licht Shepard, and Shirley Riordan.

Thereafter, motions for summary judgment were filed by Appellees. The motions for summary judgment generally alleged: (1) a lack of duty owed by them to Appellant; (2) that their acts or omissions were not a proximate cause of Appellant's injuries, and that the sole proximate cause of any such injuries was the acts or omissions of Salazar; and (3) that Appellees are not joint and severally or vicariously liable for Appellant's injuries since no legal relationship existed between them and Salazar. The trial court granted these motions for summary judgment on May 10, 1993 and severed Appellant's action against Appellees from the original action, with Salazar and Oppenheim remaining as defendants, making the summary judgment a final and appealable judgment. The severed action was re-numbered as Cause No. 93-5294.

## II. *DISCUSSION*

The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985); *Brown v. KPMG Peat Marwick,* 856 S.W.2d 742, 745 (Tex.App.—El Paso 1993, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970); *Brown v. KPMG Peat Marwick,* 856 S.W.2d at 745.

In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon,* 690 S.W.2d at 548–49; *Brown v. KPMG Peat Marwick,* 856 S.W.2d at 745; *Stoker v. Furr's, Inc.,* 813 S.W.2d 719, 721 (Tex.App.—El Paso 1991,

writ denied). Where the defendants are the movants and they submit summary evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *Perez,* 819 S.W.2d at 471; *Bradley v. Quality Service Tank Lines,* 659 S.W.2d 33, 34 (Tex. 1983); *Brown v. KPMG Peat Marwick,* 856 S.W.2d at 745–46.

The issue, central to the proper disposition of this appeal, is whether the group of abortion protesters qualifies as an "unincorporated association." This issue takes on importance due to the potential individual tort liability of members of such an association for the negligence of other members or the negligence of the association itself. The Texas Supreme Court has defined an unincorporated association as "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." *Cox v. Thee Evergreen Church,* 836 S.W.2d 167, 169 (Tex.1992).

Although no Texas cases have specifically held that a member of such an association may be liable for the tortious act of another member, recent cases have suggested that such liability may in fact be imposed. *See Cox,* 836 S.W.2d at 170, 173; *Holberg & Co. v. Citizens Nat'l Assurance Co.,* 856 S.W.2d 515, 518 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Hutchins v. Grace Tabernacle United Pentecostal Church,* 804 S.W.2d 598, 599 (Tex.App.—Houston [1st Dist.] 1991, no writ). In the *Hutchins* case, the Court held that the members of an association may become liable under a contract signed by another member of the association, if the members assent to or ratify the contract. *Hutchins,* 804 S.W.2d at 599. In *Cox,* the Supreme Court held that nonmembers of the association can bring suits for negligence against the association. *Cox,* 836 S.W.2d at 173. The Supreme Court also recognized that in such tort actions, member liability depends upon such factors as the nature of the association and the individual member's involvement in the conduct giving rise to the cause of action. *Id.* at 170, *citing generally* 6 Am.Jur.2d *Associations and Clubs* § 48

(1963).[2] In *Holberg & Co.*, the Court, citing *Cox*, held that members of an association incurring a debt on behalf of the association or assenting to its creation are personally liable. *Holberg & Co*, 856 S.W.2d at 518. Moreover, *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 69 (Tex.1989), the Supreme Court stated, "Under concert of action, those who are in pursuit of a common plan or design to commit a tortious act and actively participate in it or lend aid, cooperation, or encouragement to the wrongdoer are equally liable." *Citing Prosser and Keeton on the Law of Torts* § 46 (W. Keeton 5th ed. 1984). This theory of concert of action is also embodied in the Restatement of the Law of Torts, § 876.[3]

The summary judgment proof in the instant case includes the deposition testimony of Appellees, as well as the deposition testimony of Salazar and Oppenheim. This deposition testimony included descriptions of the organization of abortion protesters as well as descriptions of their plan of action once the demonstration began. Specifically, Oppenheim testified in his deposition that as an organizer of the demonstration, he called various people to ask for their participation. He further testified that this dissemination of information about the protest was done by telephone and word of mouth, and that at that time no formal list of potential participants existed. This testimony was supported by the deposition testimony of the other Appellees and Salazar. Salazar and Appellees Jameson and Landry testified that they could not remember exactly how or when she learned about that specific protest. Appellees Madrid, James Gose, and Aileen Gose

testified that they learned about the protest by word of mouth the night before the protest was to take place. Appellee Arellano testified that Salazar told her about the protest two days before it was to occur. Appellee Juhl testified that someone, she did not know who, called her at 3:00 a.m. the morning of the protest to tell her about it. Finally, Appellee Baldwin testified simply that someone told her about the protest.

Oppenheim also testified that a group of approximately 300–400 people met at the Alive Ministries Church the night before the protest for a prayer service and that at that meeting, the possibility of the demonstrators' arrest and what to do when the police came were discussed. All Appellees testified in their depositions that the protesters met as a group at the Alive Ministries Church the morning of the protest and then traveled from the church to the clinic to begin the demonstration. Appellees Jameson and Juhl also testified that cars and vans were used to transport the protesters from the church to the clinic, and that those people who were willing to protest on the premises of the clinic and expose themselves to potential arrest were taken to the clinic in these cars and vans.

The record shows that Appellee Landry testified in his deposition that when the protesters met at the church prior to traveling to the clinic, they were instructed on their purposes in protesting, what to expect from the clinic and the police, and how to respond to the clinic and police. The purposes of the group, as described by Landry and the other Appellees, was to block entry to the clinic in

---

**2.** Section 48 reads in part:
  Tort liability of a member may exist without personal participation in the wrongful act of a voluntary association if the member sets the proceedings in motion or agrees to a course of action which culminates in the wrongful conduct. Also, although the members of a voluntary association may not be partners in a legal sense, still, where, in considerable numbers, they pursue a course of conduct agreed upon to effect the agreed purpose, they become responsible, not only each for his own acts, but each for the acts of the other and for all.... 6 Am.Jur.2d *Associations and Clubs* § 48 (1963).

**3.** RESTATEMENT (SECOND) OF TORTS § 876 (1977) provides as follows:

Persons Acting in Concert. For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
(a) does a tortious act in concert with the other or pursuant to a common design with him, or
(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

an attempt to make it more difficult for people to obtain abortions there. Landry further testified that the protesters were informed at the church prior to traveling to the clinic that they faced the possibility of arrest during the protest and that it would slow their removal by the police if they were to go limp and force the police to carry them away. Appellee Riordan testified that, during the discussion among the group at the church that morning about what to do if the police came, the protesters were told to become as helpless as babies and to go limp. Appellee Aileen Gose also testified that going limp was suggested at the church, and Appellee Madrid testified that it was possible that they were so instructed. Contrary to this, Appellee James Gose testified that no one told him to go limp, and Appellee Jameson testified that it was not part of the plan to go limp. The record also shows that, regardless of whether the protesters were instructed to go limp when the police arrived, they were instructed by their fellow protesters where to go and which doors to block once the demonstration began at the clinic.

■ This summary judgment evidence raises a fact question as to the status of the group of abortion protesters as an unincorporated association, i.e., whether the group was a "voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." *Cox v. Thee Evergreen Church*, 836 S.W.2d at 169. Further, this evidence raises a fact question as to whether Appellees were acting in concert with each other and with Oppenheim and Salazar.[4]

■ In their briefs, Appellees argue that they cannot be liable for Appellant's injuries on a vicarious liability theory, since they exercised no control over the activities of Salazar; however, the individual tort liability that may arise from one member of an unincorporated association acting in concert with other members is not a form of vicarious liability. It is direct tort liability resulting from the negligent acts of setting the proceedings leading to the injurious conduct in motion or agreeing and acting in concert with the actual tortfeasor. *Guyton v. Howard*, 525 So.2d 948, 956 (Fla.Dist.Ct.App.1988).

Appellees further argue in their briefs that the summary judgment evidence conclusively establishes that they owed no duty to Appellant to prevent Salazar or any other demonstrator from injuring him. This argument likewise ignores the potential for liability based upon Appellees' membership in an unincorporated association, if such an association is found to exist. If such an association is found to exist, the duty owed to Appellant is not a duty to prevent other members from injuring him, but a duty to not set the proceedings leading to the injurious conduct in motion and a duty to not agree and act in concert with the actual tortfeasor.

The summary judgment evidence in the instant case includes deposition testimony from several Appellees stating that they did indeed agree with and act in concert with Salazar and the other demonstrators, leading to the acts of Salazar that injured Appellant. As such, a fact question remains as to a possible breach of the duty owed by a member of an unincorporated association.

On the issue of proximate causation, Appellees argue that the sole proximate cause of Appellant's injuries was the acts of Salazar in going limp and forcing Appellant to attempt to physically remove her from the clinic's property. Once again, this argument ignores the possibility for direct liability resulting from Appellees' actions in concert with Salazar.

■ The two elements of proximate cause are cause in fact and foreseeability. *Nixon*, 690 S.W.2d at 549; *Campos v. Ysleta Gen. Hosp., Inc.*, 836 S.W.2d 791, 794 (Tex.App.— El Paso 1992, writ denied). Cause in fact denotes that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would

4. This opinion should not be read as a condemnation of the rights of the demonstrators to make their views and beliefs known to the public, regardless of the cause. We are ever mindful of our rights under the First Amendment to peaceably assemble; however, the sole issue involved here is whether the limited facts of this case create a fact question as to the status of the demonstrators as an unincorporated association and their potential liability resulting therefrom.

have been incurred. *Nixon,* 690 S.W.2d at 549; *Campos,* 836 S.W.2d at 794. Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Nixon,* 690 S.W.2d at 549–50; *Campos,* 836 S.W.2d at 794.

By agreeing upon and participating in a course of conduct that included sitting and/or going limp when the police officers instructed them to leave the premises of the clinic, the group created a situation where the police officers would be forced to physically carry them off of the premises. The summary judgment evidence shows that Appellant testified at his deposition that he did in fact injure his back while lifting one of the protesters. Nothing in the record before this Court indicates that Appellees challenge this assertion by Appellant. The record also shows that Appellees testified at their depositions that they knew that a person could injure his or her back while attempting to lift a heavy object such as a human body.

As a general rule, the question of proximate causation is a fact question for the jury. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 756 (Tex.1975); *J.K. & Susie Wadley Research Inst. v. Beeson,* 835 S.W.2d 689, 698 (Tex.App.—Dallas 1992, writ denied). In the instant case, there is direct evidence that Appellant's injuries were caused by attempting to lift one of the protesters and that this type of injury was foreseeable to Appellees. As such, it is the opinion of this Court that a material fact issue exists in this case as to whether the negligence of Appellees in agreeing with and acting in concert with Salazar and the other protesters, if any, was a proximate cause of Appellant's injuries.

Finally, in her brief, Appellee Baldwin raises the defense of the "Fireman's Rule." This is the common law rule that public safety officers, including police officers, are regarded as licensees under the rules of premises liability. As such, a public safety officer can not recover from owners or occupiers of land who merely negligently create the need for their presence. *Buckley v.*

*New York,* 176 A.D.2d 207, 574 N.Y.S.2d 329, 330 (1st Dep't 1991).[5] In the instant case, the abortion protesters were not owners or occupiers of land; therefore, we conclude that the "Fireman's Rule" of premises liability is inapplicable to Appellees.

Given the above, we conclude that at the threshold, a fact question exists as to the status of the abortion demonstrators as an "unincorporated association." From this issue, more fact questions are present regarding Appellees' breach of their duties under a group liability theory and whether any such breach was a proximate cause of Appellant's injuries. As such, Appellees, as defendants below, have failed in their burden as movants for summary judgment to conclusively disprove at least one essential element of Appellant's cause of action, and the trial court thus erred in granting summary judgment. Accordingly, Appellant's Points of Error Nos. One through Four are sustained, and the cause is remanded to the trial court for further proceedings.

---

5. Two major exceptions to the above rule exist for wanton, willful, or intentional behavior and for acts of negligence occurring after the public

safety officer reaches the scene. *Rosa v. Dunkin' Donuts of Passaic,* 122 N.J. 66, 583 A.2d 1129, 1133–1134 (1991).